74

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN MAURICE GIBBONS,
      Petitioner,

-vs-

                                Case No: 2:08-cv-11354
                 Disrict Judge Robert H. Cleland
          Magistrate Judge R. Steven Whalen

HUGH WOLFENBERGER - Warden,
      Respondent.
_____/

**ATTORNEY GENERAL OFFICE**
Attorney for Respondent
_____

KEVIN MAURICE GIBBONS #221815
In Propria Persona for Petitioner

_____

# FILED

MAY – 8 2008

CLERK'S OFFICE, DETROIT-PSG
U.S. DISTRICT COURT

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

BY:  KEVIN MAURICE GIBBONS #221815
      In Propria Persona
      Macomb Correctional Facility
      34625  26 Mile Road
      New Haven, Michigan 48048

# TABLE OF CONTENTS

Statement of Jurisdiction...............................................i

Statement Regarding Exhaustion..........................................ii

Standard of Review.....................................................iii

Statement of Questions Presented .......................................iv

Statement of Facts and Procedural History ............................I-V

Arguments:

I. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE PROSECUTOR IMPROPERLY INFLUENCED THE COMPLAINANT TO TESTIFY AND THE TRIAL COURT ERRED IN FAILING TO CONDUCT THE REQUESTED HEARING. ................................1-4

II. PETITIONER CONVICTIONS SHOULD BE REVERSED BECAUSE THE PROSECUTOR, CONTRARY TO THE COURT'S RULING, IMPROPERLY QUESTIONED PETITIONER CONCERNING HIS PRIOR CONVICTION AND THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE QUESTIONING, AND DENYING THE MOTION FOR MISTRIAL. ...............................5-8

III. PETITIONER CONVICTIONS SHOULD BE REVERSED BECAUSE HE IS ACTUALLY INNOCENT. ....................9-15

IV. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO CALL RES GESTEA WITNESSES. ...........................16-18

V. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO CALL EXPERT WITNESSES. .......................................19-21

VI. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO PROPERLY IMPEACH THE PROSECUTION WITNESSES. ....................22-25

VII. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO MAKE TIMELY OBJECTIONS. ....................................26-28

VIII. PETITIONER'S RIGHT TO PREPARE FOR TRIAL AND ASSERT A DEFENSE WAS VIOLATED, WHERE THE PROSECUTION INTENTIONALLY AND WITH FLAGRANT MALICIOUS INTENT DEPRIVED PETITIONER OF NECESSARY DISCOVERY MATERIALS IN VIOLATION OF BRADY v MARYLAND AND DUE PROCESS OF LAW. ............29-38

IX.   PETITIONER WAS DENIED A FAIR TRIAL, WHERE THE
      PROSECUTOR COMMITTED A MISCONDUCT, VIOLATING
      PETITIONER'S RIGHT TO DUE PROCESS OF LAW.
      U.S. CONST. AM XIV; CONST 1963 ARTT. 1 §20. .........39-43

X.    PETITIONER      WAS      DENIED      THE      EFFECTIVE
      ASSISTANCE OF COUNSEL AS GUARANTEED BY THE
      SIXTH AMENDMENT OF THE U.S. CONSTITUTION. US
      CONST. AM VI; MICH CONST. 1963, ART 1 §20. .........44-46

XI.   PETITIONER WAS DENIED SUE PROCESS OF LAW,
      WHERE   THE   PROSECUTION   FAILED   TO   GIVE
      PETITIONER NOTICE OF SENTENCE ENHANCEMENT
      WITHIN (21) DAYS PRIOR TO PETITIONER BEING
      ARRANGED ON THE INFORMATION IN CIRCUIT COURT. .......47-48

Relief Requested .................................................

Appendixes .................................................

## STATEMENT OF JURISDICTION

Petitioner Gibbons is a state prisoner seeking Habeas Relief. He was convicted in the Third Judicial Circuit Court for Wayne County, Michigan. In a jury trial Petitioner was found guilty of assault with intent to commit murder; possession of a firearm by a felon; and felony firearm, before the Honorable Ulysses Boykin. Petitioner made a complete round in the state court appellate system. i.e. Michigan Court of Appeals and Michigan Supreme Court. Petitioner now brings this Petitioner for Writ of Habeas Corpus under 28 USC § 2254.

## CONSOLIDATION

On February 9, 2007, the trial court denied Petitioner's Motion for Resentencing, for which Petitioner requested that this Honorable Court consolidate the judgment herein. (see appendix  ) The sentence error is a part of the case noted above.

i

## STATEMENT REGARDING EXHAUSTION

Petitioner Gibbons recognizes that he bears the burden of proving that he has exhausted his state remedies with respect to his Habeas claims. **Rust v Zent**, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner also recognizes that taking his claims to the highest state court is a necessary element of exhaustion, even if review there is discretionary. **O'Sullivan v Boerckel**, 526 U.S. 838 (1999).

In support of his position that he has exhausted his Constitutional claims, Petitioner Gibbons states that he has presented his claims within this petition and memorandum to the Michigan State Courts, including the trial court, Michigan Court of Appeals, and Michigan Supreme Court. Petitioner Gibbons asserts that every stage of theses proceedings  the state court were fairly presented with the substance of his Federal Constitutional claims and were given a full fair opportunity to rule on his claims before he sought relief in this court.

## STANDARD OF REVIEW

The standard of review for a Habeas Petition is set forth in **28 U.S.C. §**
**2254(d)**. That section provides that the Writ may be **GRANTED** if the state
appeal:

> (1) Resulted in a decision that was contrary to or
> involved an unreasonable application of clearly
> established federal law, as determined by the Supreme
> Court of the United States, or
>
> (2) Resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the state court proceeeding.

**28 U.S.C. § 2254 (d)(2)** presents an independent ground permitting the granting
of the Writ if the state court decision was based on an unreasonable
determination of the facts. See **Williams v Taylor**, supra, clearly denounced
the strict "reasonable jurist" test previously utilized by several Federal
Circuits in assessing whether a state court's determination was an
unreasonable application of Supreme Court precedent.

In section II of Justice O'Connor's opinion (which is the opinion of the
court as to that section). She indicated that determining whether an
unreasonable application of clearly established Federal law occurred by
deciding whether all reasonable jurist would agree is erroneous, while the
court did not provide substantial guidance on the standard of review to be
applied by this court under the Antiterrorism and Effective Death Penalty Act,
there can be no doubt that the reasonable jurist test should not be employed.

The William's Court states the inquiry is simply whether the state
court's application of clearly established Federal law was objectively
unreasonable. Undoubtedly, the **AEDPA** has raised the bar but how far? The state
court's application of clearly established Federal law has to be more than
incorrect or slightly wrong, but not as Williams instructs, so wrong that all
jurist would agree. A clearly erroneous standard should be employed in an
objective manner. See **Tran v Lindsey**, 212 F.3d 1143 (9th Cir.2000). Also the
extensive discussion of the Williams decision in **Francis v Stone**, 221 F.3d 100
(2nd Cir.2000).

iii

## STATEMENT OF QUESTIONS PRESENTED

I.   SHOULD PETITIONER"S CONVICTIONS BE REVERSED BECAUSE THE PROSECUTOR IMPROPERLY INFLUENCED THE COMPLAINANT TO TESTIFY AND THE TRIAL COURT ERRED IN FAILING TO CONDUCT THE REQUESTED HEARING?

II.   SHOULD PETITIONER'S CONVICTIONS BE REVERSED BECAUSE THE PROSECUTOR, CONTRARY TO THE COURT'S RULING, IMPROPERLY QUESTIONED PETITIONER CONCERNING HIS PRIOR CONVICTION AND THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE QUESTIONING, AND DENYING THE MOTION FOR MISTRIAL?

III.   SHOULD PETITIONER'S CONVICTIONS BE REVERSED BECAUSE HE IS ACTUALLY INNOCENT?

IV.   SHOULD PETITIONER'S CONVICTIONS BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO CALL RES GESREA WITNESSES?

V.   SHOULD PETITIONER'S CONVICTIONS BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO CALL EXPERT WITNESSES?

VI.   SHOULD PETITIONER'S CONVICTIONS BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO PROPERLY IMPEACH THE PROSECUTION WITNESSES?

VII.   SHOULD PETITIONER'S CONVICTIONS BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO MAKE TIMELY OBJECTIONS?

VIII.   WAS PETITONER'S RIGHT TO PREPARE FOR TRIAL AND ASSERT A DEFENSE VIOLATED, WHERE THE PROSECUTION INTENTIONALLY AND WITH FLAGRANT MALICIOUS INTENT DERPIVED PETITIONER OF NECESSARY DISCOVERY MATERIALS IN VIOLATION OF BRADY v MARYLAND AND DUE PROCESS OF LAW?

IX.   WAS PETITIONER DENIED A FAIR TRIAL, WHERE THE PROSECUTOR COMMITTED A MISCONDUCT, VIOLATING PETITIONER'S RIGHT TO DUE PROCESS OF LAW. U.S. CONST. AM XIV; CONST. 1963 ART 1, §20?

X.   WAS PETITIONER DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION. US CONST. AM VI; MICH CONST. 1963, ART. 1, §20?

XI.   WAS PETITIONER DENIED HIS DUE PROCESS OF LAW, WHERE THE PROSECUTION FAILED TO GIVE PETITIONER NOTICE OF SENTENCE ENHANCEMENT WITHIN (21) DAYS PRIOR TO PETITIONER BEING ARRANGED ON THE INFORMATION IN CIRCUIT COURT?

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 14, 2001 Anthony Charles Bridges was involved in a shooting.   During the time of the incident the victim state that he was with 3 people none of which testified at trial, nor were they mentioned in the police report.   Mr. Bridges was the sole witness who refused to make statement on 2 separate occasions while officer was filing his report.   Bridges stated during trial that he made no statement to officers but to EMS Technitions  who were not subpoenaed or gave statements.   And the police report indicated that Mr. Bridges did in fact make a statement which tends to be untruthful based on Mr. Bridges testimony.    The petitioner Mr. Gibbons was arrested the following year.   After seeing Mr. Bridges numerous times they were practically neighbors Bridges lived on the next block and testified to being friends with the petitioner and working on cars barbecues that they never had any problems.    Bridges also testified to knowing the petitioner's friends and whereabouts but never gave any of this information to investigating officer Derek Duff-------Bridges stated that he had seen the petitioner and called the police over 20 times-------but there is no record of any such calls.   Also Bridges testified to hugging the petitioner and showing him his wounds and asking him what happen indicating that he was unsure of himself.-------The petitioner was arrested bonded over where then he was charged with armed robbery and attempted murder the petition was bonded over the court determined   that a robbery

I

that in fact took place, and based on Bridges testimony that the
petitioner was the person who shot him.   There was nothing in the
police report to indicate that a robbery had taken place nor
where any statements made as such.   Prosecutions argument was
that Mr. Bridges was being robbed by two assailants and then was
shot in the process.   The defense theory was that Mr. Bridges and
his friend come to rob a known drug house where gambling was
going on that night and all the fact point towards him being
caught in a cross fire which led from Phillip to Manistque.
Bridges Testimony is that he was shot in the back and his legs no
longer functioned but maraciously  enough he was located on the
block over and down with no logical explanation as to how this
miracle took place.   He claimed to be shot numerous times, no
bullets were produced slugs/shell, no test finger prints not to
equate the shell to the crime, even the victim was with 3 people
and claimed to be going to a party at a friends house no one seen
the shooting no one testified as to Mr. Gibbons petition having a
gun or shooting anyone.   There was a poor investigation, little
if any no witnesses were questioned.   The fact that Mr. Bridges
know the petitioner and where I lived/the next street over-------
and never sent the police there is no record of him doing this.--
-----wasn't and issue for prosecution.   In-between November 14,
2001 and August 15, 2002 no one was interviewed or contacted
there was nothing to indicate or substantiate the prosecutions
case who was clearly more concerned with a conviction rather than
the truth.   Defense theory is that Mr. Bridges and his friends

II

came to stick up this house which led to a shootout this would explain Mr. Bridges lack of cooperation, why no one testified on his behalf, why he never mentioned any witnesses, why they parked down the street on the other side of the street,-------and why when asked why didn't every one get out of the car Mr. Bridges stated because they were waiting on him to go to the store after just testifying to just leaving the store that went unobjected to by counsel like the many other contradictions throughout the trial.   The petitioner wrote to trial counsel Mr. Richard Powers on several occasions with no reply and also had family members try to reach him with no reply the petitioner then proceeded to contact the Attorney Grievance Commission which the court mentioned before trial and it was brought to the courts attention that the petitioner did not want to proceed to trial with this counsel.   Mr. Powers finally did come to see the petitioner for about 15 minutes the log can reflect this.   The petitioner did ask what the strategies when trial counsel stated that we would play it by ear indicating that he had no strategy.   A motion to the court was requested for a direct verdict trial court then refused because of overwhelming evidence.   The petitioner contends that there was no overwhelming evidence and the victim being the sole witness for the state there was then a side bar where counsel then requested no to have petitioners prior felony because it would prejudice the petitioners case where the court then instructed the prosecutor not to present any prior bad acts) before the trial began it was brought to the petitioner that the prosecution Athina Siringas was threatening the witness to

III

testify where he admitted in front of a room full of people that he was not going to lie on the petitioner and that he was unsure of the events of that night because he had been up for days getting high. See affidavits. This was brought to the courts attention where he then questioned the prosecution and she of course replied that she never threatened Mr. Bridges to testify. Mr. Bridges was also incorcerated and was writed back from Jackson to testify. Also before trial prosecution come back to the bull pin and threatened the petitioner and told me that she was going to nail me and get everything that I got coming this also was brought to the courts attention.-------No counsel was present but prosecution in private/without counsel being present. Prosecutor was also questioned by the court this was also excused. Prior to being spun to Judge Boykin Honorable Judge Fasard was presiding over the case and ordered that the requested evidence be presented in order for petitioner to prepare a substantial defense that was motioned by trial counsel. See Appendix. Trail counsel then elected to proceed to trial without the necessary discovery materials. The lower courts have all ignored the focus which is on whether fundamental fairness require that the petitioner have access to the requested information. Where the prosecution "Receives a specific" and relevant requests the failure to make a response is seldom, if ever excusable. Some evidence has such obvious substantial value to the defense that the prosecution must disclose it even without specific request. Discover material requested police reports, criminal history, medical records, dental records, etc. where

IV

Bridges stated that his teeth had been knocked out by the petitioner and defense claim they were missing prior to the incident which would have shown Mr. Bridges to be untruthful and could have impeached him but instead went ignored by the prosecution, trail court and lower courts.   The discovery material was/is necessary and had been granted by the court and was necessary for the preparation of defense and in the interest of a fair trial.   The prosecution has deliberately disrespected the courts orders.   The prosecutor engaged in a misconduct for which prejudice the petitioner resulting in a conviction.   Trail counsel motioned the court for necessary discovery.   Counsel failed to ensure that the requested discovery material were disclosed.   Counsel elected to proceed to trial knowing that the necessary discovery material were not provided.   Thus rendering his cross examination of the "only" prosecution key witness ineffective.   Counsel also failed to investigate the evidence by the Detroit Police Dept., ie. ballistic testing, shell casing, insuring that all bullets were retrieved and make and type, treating physician and ensuring that the chain of command of evidence was followed.   The victim Mr. Bridges testimony clearly contradicts the police records as well as the reports turned into exhibits by the prosecutors.   This is the issue the petitioner has been arguing with the lower courts and has since been ignored by the courts the petitioner contends that he could not prepare an adequate defense against fabricated evidence.

V

## A R G U M E N T S

I. **PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE PROSECUTOR IMPROPERLY INFLUENCE THE COMPLAINANT TO TESTIFY AND THE TRIAL COURT ERRED IN FAILING TO CONDUCT THE REQUESTED HEARING.**

**Summary of Argument**

Petitioner Gibbons submits the trial court's denial of a defense request for a hearing concerning possible intimidation of the complaining witness by the prosecution was an error. Here, it was clear the complainant did not want to continue the prosecution when he informed the prosecutor that he did not want to testify. (II, 73-74) He made the court aware that neither his family or himself was threatened, nor has anyone offered any compensation for not testifying. After the witness (victim) testified, it was brought to the attention of the court that the prosecutor had made several attempts to force him to testify by constant threats. (II 189-190) According to Petitioner, other inmates could testify that they were present when these threats took place. The actions of the prosecutor occurred after the prosecutor found out that the victim/witness refused to participate in the trial porceedings. (II, 5-6)

Petitioner Gibbons contends that without the testimony of the victim/witness, the prosecution had no case, thus violating the United States Supreme Court precedent in <u>Brecht v Abrahamson</u>, 507 U.S. 619 (1993).

The applicability of **Brecht** is so clear that the Petitioner Gibbons was denied his Due Process Rights. On appeal, the Michigan Court of Appeals, in an opinion that never cited **Brecht** or any of the United States Supreme Court's numerous post **Brecht** cases, concluded that the may not intimidate a witness in court or out of court and that the prosecutor may inform the witness that

false testimony could result in a perjury charge. The Court of Appeals then concluded that because the trial court denied a hearing to determine whether or not he confrontation took place was no error because complainant's reluctance to testify was brought out into the record.

Upon this Court's review it should be noted that the state courts failed to apply a reasonable standard that was not contrary to the Supreme Court's decision on this issue.

## Standard of Review

Habeas corpus relief for trial errors involving prosecutorial misconduct should be granted if the error had substantial and injurious effect or influence in determining the jury's verdict. Brecht v Abrahamson, 507 U.S. 619 (1993). Allegations of prosecutorial misconduct are review on a case by case basis. While an appellate court review a trial courts decisions regarding the questioning of a witness for an abuse of discretion, while the trial court's factual determination is reviewed for clear error by Michigan Court Rule 2.613 (C). People v Bahoda, 448 Mich 261(1995); People v Lucas, 188 Mich App 554 (1991).

The standard of review for a habeas petition is set forth in 28 U.S.C. § 2254(d). That sections provides that the writ may be granted if the state appeal resulted 9in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination in light of the evidence presented in the State court proceeding.

This issue was properly preserved by defense counsel's formal request for a hearing on the alleged prosecutorial misconduct. A harmless error review is

necessary so that the courts can consider a variety of factors when evaluating whether prosecutorial misconduct caused sufficient prejudice to constitute a due process violation. Also included in this review is whether the rposecutor deliberately and intentionally committed this misconduct. **United States v Wilson**, 135 F.3d 291 (4th Cir.1998)

In **Nevers v Killinger**, 169 F.3d 352 (6th Cir.1999), the Sixth Circuit approvingly cited several cases from other circuits for the proposition that the "contrary to" clause applies when the Supreme Court has set forth a "clear rule" requiring a certain result. If no such clear rule applies, the state court decision must be reviewed to determine whether it was an "unreasonable application" of Supreme Court precedent. The Michigan Supreme Court has failed to properly apply the "harmless beyond a reasonable doubt" standard.

When the trial court denied the request for a hearing, it determined that the allegations were unfounded and did not place any credence in the submitted facts. (II, 191-192) The court did not offer an explanation as to why he did not give any credence to the allegations of what occurred during the conversation with the complainant and the prosecutor while he informed him that he did not want to pursue the prosecution nor did he want to testify.

Preservation was properly noted by the request for such a hearing to determine the actions of the prosecutor. **People v Carines**, 460 Mich 750 (1999). A prosecutor may not intimidate witnesses in or out of court. **People v Clark**, 172 Mich App 407 (1988).

The duty of the prosecutor in a criminal case is to seek justice. As such, the prosecutor should prosecute with earnestness and vigor but may not use improper methods calculated to produce a wrongful conviction. **Berger v United States**, 295 U.S. 78 (1935). If such use of methods so infect the trial with unfairness as to make the resulting conviction a denial of due process,

-3-

it may justify a reversal of the conviction. **Darden v Wainwright**, 477 U.S. 168 (1986). Appellate review of the prosecutor's misconduct therefore consists of a two part test; first, was the prosecutor's conduct actually improper; second, did the misconduct, taken in the context of the trial as a whole, violate Petitioner's right to due process, if so, the intended prosecutorial misconduct should have cause a mistrial and the Double Jeopardy Clause may bar further prosecution.

When the prosecution intimidations scares a witness and cause him/her to testify when they refused to do so violates petitioner's due process rights under the United States Constitution Amendment V, XIV. If this Court were to believe the allegations, which were supported by the statements complainant made to the prosecutor and court that he did not want to testify, and the intimidation of the prosecutor, reversal is reuired.

When allegations of prosecutorial intimidation of a witness, the proper remedy was to conduct a hearing outside of the presence of the jury and have the trial court determine whether the allegations were valid. Petitioner Gibbons submits that pursuant to **MCR 7.211 (C)**, if the state courts determines that he was not entitled to a new trial, he could have requested a remand for development of a factual record, which was denied by the trial court.

Although witnesses who are not criminal defendants cannot properly invoke the Fifth Amendment privilege against self-incrimination, they can invoke the privilege to avoid answering incriminating questions. **Burke v Bd. of Governors of Fed. Reserve Sys.**, 940 F.2d 1360 (10th Cir.1991). The court must review assertions of the 5th Amendment right on a question by question basis to provide him/her with specific information to make and informed decision and establish a record for review on appeal. This approved action was not taken and therefore, Petitioner Gibbons was denied his due process.

-4-

**II. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE PROSECUTOR, CONTRARY TO THE COURT'S RULING, IMPROPERLY QUESTIONED PETITIONER CONCERNING HIS PRIOR CONVICTIONS AND THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE QUESTIONING, AND DENYING THE MOTION FOR MISTRIAL.**

## Summary of Argument

Prior to trial, the court had granted a defense request to exclude a prior conviction for armed robbery and felony firearm, as being too prejudicial and lacking any probative value. (I, 12) During cross-examination of Petitioner Gibbons, he testified that he had not carried a weapon on the day of this alleged incident, explaining that another person pulled out a gun. When asked by the prosecutor: Never carried a gun?, defense objected and the court instructed the prosecutor to narrow down the time frame, the prosecutor then asked: Prior to this incident, the shooting, at any time did you carry a gun? Petitioner answered: I don't carry a weapon. The prosecutor then questioned him as to the prior conviction. (III, 29-30)

The court overruled the objection to this line of questioning. Subsequently, it denied a motion for a mistrial, indicating it will permit this line of questioning because Petitioner denied ever carrying a weapon, which caused a door to be open. (III, 54) Petitioner Gibbons submits that these questions denied him a right to a fair trial and the trial judge abused his discretion in admission of this type of evidence to be introduced to the jury which resulted in a verdict of guilty. Defense counsel tried to provide an opportunity to the trial court to rectify the error by motioning the court for a mistrial, but the trial judge denied said motion which was a clear abuse abuse of discretion.

## Standard of Review

Due Process requires that a judge possess neither actual nor apparent bias. Appellate courts will usually defer to the trial judge's conclusions about the effects of prosecutorial misconduct during trial. **United States v Marshall**, 75 F.3d 1097 (7th Cir. 1996). A trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial.

A state court's decision is "contrary to" and "an unreasonable application of" a decision of the United States Supreme Court if the state applies a rule that contradicts the governing law set forth in those cases. **Williams v Taylor**, 529 U.S. 362 (2000). When the state court's decision is contrary to clearly established United States Supreme Court precedent, the federal court will give the state court's decision no deference. In other words, a federal judge cannot uphold a state court's decision which is contrary to Supreme Court precedent on the grounds that the state court's error was reasonable or understandable.

Petitioner Gibbons contends that the prosecution purposely side-stepped the court's ruling when the trial judge instructed the prosecutor to narrow his questioning down to a certain time frame. The prosecutor continue with his line of questioning ignoring the judge's ruling. There was no apparent reason for the prosecution to introduce Petitioner's prior conviction for armed robbery. It is well noted that an armed robbery can be committed without utilizing a gun or any kind of weapon or even the presence of a weapon.

The complainant must reasonably believe a weapon is present and that the weapon is considered dangerous is dependent on what it is and how it is used. **People v Norris**, 236 Mich App 411 (1999). When the prosecution side-stepped the trial court's ruling and continued to question Petitioner in such a time frame violated the court's previous ruling and Petitioner Gibbons was denied a right to a fair trial by injecting highly prejudicial evidence which resulted

-6-

in a conviction.

Petitioner was never asked whether he had been convicted of possession of a weapon. If he had of asked such a question and Petitioner replied in the negative, then it would have been proper impeachment, using his prior conviction. In the case at hand, despite the instruction by the court to narrow down the time frame, the prosecution asked the same previously objected to question. It should be noted that Petitioner answered the question in the present tense. he never denied carry a weapon at any time, only that he did not carry a weapon.

A habeas petitioner who wishes to challenge the state court's factual finding has a very uphill challenge under the AEDPA. Section 2254(d)(2) requires the petitioner to show that the state court's decision was based on "an unreasonable determination of the facts", while §2254(e) requires the federal court to apply a "presumption of correctness" to the state court's fact-findings.

Petitioner has clearly and convincingly proved that the factual record will present evidence that the trial court was wrong in its application. This presumption applies to favorable facts towards the Petitioner. Burden v Zant, 498 U.S. 433 (1991).

The court's determination that Petitioner had opened the door to this line of questioning was incorrect. The prosecution failed to follow instruction of the court. The prosecution was able to cast doubt on Petitioner's testimony as being untruthful which influenced the jury's decision making ability. Nor can this error be harmless. The case was essentially a credibility contest between complainant and Petitioner. There was no dispute that the complainant was shot. The only question for the jury was who did the shooting. The complainant's credibility had been seriously

compromised and he initially refuse to testify. This improper line of questioning cast doubt in the eyes of the jury which resulted in a wrongful conviction.

The only remedy for Petitioner was to motion the court for a mistrial, which was denied. Said motion prevents irregularity which are prejudicial and impairs Petitioner's ability to have a fair trial. **People v Griffin**, 235 Mich App 27 (1999).

The irregularity was present from the beginning of trial. The court made a ruling to control the proceedings but the prosecution ignored the ruling. The prosecution was made aware the Petitioner was taking the stand to testify and elected to prejudice Petitioner by using prior conviction which had been ruled on. In a case of this matter, credibility is at issue between the complainant and Petitioner, whose testimony was substantially similar in many respects. Therefore, the only avenue the prosecution could take to get a conviction was to introduce highly prejudicial evidence and when the trial court denied the motion for a mistrial, the only  cure at this stage is a reversal.

-8-

## III. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE HE IS ACTUALLY INNOCENT.

### Summary of Argument

On November 14, 2001 at approximately 11:35 p.m. on Avondale and Manistque, in the city of Detroit, Michigan. Mr. Anthony Bridges, complainant, claims that he was shot 9 to 11 times by Petitioner Kevin Gibbons. Mr. Bridges claims that Petitioner put a gun to his head while another assailliant stood by with a gun. Mr. Bridges claims that he elbowed Petitioner hand holding the gun and then punched Petitioner in the face knocking him to the ground. Where he then took off running and he heard shots but didn't see who fired them. (PE, 11-12) Mr. Bridges testified to being shot once he was (2) houses away. (PE, 16-17) Mr. Bridges sworn testimony is that he was shot in his back and his legs no longer were able to function. (I, 11-19; PE, 9-11) The allege incident transpired on Phillip based on a witness testimony and police report. Yet, Mr. Bridges unable to walk was found by police on Manistque and Avondale. (see police report) Mr. Bridges never gave any logical explanation as to how is it that he and Petitioner were on different streets but the allege shooting took place in one area.

### Standard of Review

To satisfy the actual innocent  standard, a petitioner must show that in light of new evidence, it is more likely than not that no reasonable jurror would have found him guilty beyond reasonable doubt. The focus on actual innocence means that a district court is not bound by the admissibility rules that govern a trial, but may consider the probative force of relevant evidence that was either wrongly excluded or unavailable at trial. **Schulp v Delo**, 115

Sct 851 (1993).

The due process clause, protect accused against convictions with the exceptions of proof beyond reasonable doubt of every fact necessary to constitute the crime with which he is charged. However, as we also noted in **Engle v Issac**, 102 Sct. 1558; in appropriate cases "the principles of comity and finality that informed the concepts of cause and prejudice must be valid to the imperative of correcting a fundamentally unjust incarceration". We remain confident that for the most part "victims" of a fundamental miscarriage of justice will meet the "cause" and "prejudice" standard, but we don't pretend that this will always be true accordingly, we think that an extraordinary case where constitutional violation has probably resulted in the conviction of one who is actually innocent. A Federal habeas Court may grant the writ even in the absence of a showing of cause for the procedural default. **Murray v Carrier**, 106 Sct. 2639.

The district court must make a probabilistic determination about what reasonable jurors would do, and it is presumed that a reasonable juror would consider fairly all of the evidence presented and would conscientiously obey the trial court's instructions requiring proof beyond a reasonable doubt. To show actual innocence one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner guilty.

A prototypical example of "actual; innocence" in a colloquial sense as the case where the state has convicted the wrong person of the crime. Where to petitioner will illustrate through the testimony of Mr. Bridges, the police reports and the factual evidence that was presented, that Mr. Bridges perjured his testimony, countless contradictions, while being lead by the prosecution.

Claims of actual innocence posses a threat to a scarce judicial resources

and to principles of finality and comity. Claims require Petitioner to support his allegations of constitutional error with reliable evidence, whether it be exclupatory, scientific evidence, trustworthy eye witnesses accounts, or critical physical evidence that was not presented at trial. Greater importance, the individual interest in avoiding injustice is most compelling in the context of actual innocence. The quintessential miscarriage of justice of a person who is actually innocent has long been at the core of our criminal justice system. "Fundamental value determination in our society that it is for worse to convict an innocent man than to let a guilty man go free".

The Petitioner was arrested the following year after the alleged shooting. Mr. Bridges lived on the next street over from Petitioner. Complainant admitted to working on Petitioner Gibbons cars, bar-b-queing, and doing odd jobs for him. Mr. Bridges knew his friends, his wehereabouts, where he hung out, and even where he frequent a restaurant at. (      ) But none of this information was ever given to the police. The prosecutor lied and stated that it was not given because Mr. Bridges didn't know prior to his testimony. (      ) There was no mention of a robbery or any money being taken in the police report, but a robbery charge was included in the information and belief. Petitioner was acquitted of the robbery charge.

Mr. Bridges testified to calling the police over (20) times but there was no record of any 911 calls to the police. (      ) Mr. Bridges admitted to hugging Petitioner on more than one occasion and showing him his wounds and asking petitioner what happen that night. (      ) Indicating that he was unsure himself. Later on he tried to retract his statement, calling it a misprint. (      ) Mr. Bridges stated that he never seen Petitioner Gibbons take anything from him. (      ) After the prosecutor questioned him, he changed his statement. (      ) Mr. Bridges never mentioned that he was with three

-11-

other people in his initial statement, none of whom was called to testify or give their statements to the police in charge.

James Robinson was a witness located at the Marquette Branch Prison who was subpeona by the court to appear was never brought to trial nor mentioned. Dr. K^akish, medical examiner, dental records, and police reports, which was ordered by the court were never produced. Petitioner was unaware of these orders until 2006, after he filed his Motion for Relief from Judgement in the trial court under newly discovered evidence.

Mr. Bridges is a known drug user, who came to a drug house with guys in the neighborhood where gambling was going on during the night in question. Petitioner witnessed Mr. Bridges and another man with guns in their hands attempting to rob the gambling house in question, when an argument insued. More guns were drawn, then shots fired and people started to scatter. This is the truth of the matter and the defense theory. Now the state claims that Mr. Bridges was a victim of a robbery attempt, where Petitioner Gibbons tried to take Mr. Bridges life. Based on Mr. Bridges own testimony, he said Petitioner Gibbons and himself had a relationship and never had any problems with each other. (        )

The state failed to adhere to the discovery order which in turn resulted in a **Brady** violation.

A claim of actual innocence is procedural, rather tan substantive. Petitioner's claims are based on his innocence rather on his contention that the ineffectiveness of his counsel, which is indicative to Petitioner claim. Where he was denied a full panoply of protections afforded to Petitioner by the Constitution. The state was unable to establish cause or motive. Also, they failed to present sufficient evidence in support of previous appeals. (1) The Petitioner was denied his right to exculpatory evidence, where the prosecutor

withheld such evidence, thus denying Petitioner Gibbons a fair trial. (2) Prosecution engaged in misconduct for which prejudice Petitioner's trial. (3) Petitioner received ineffective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Const. 1963 art 1, §20.

Defense counsel requested that prosecution produce any and all reports concerning Anthony Bridges. These reports were withheld and erroneous copies of reports were admitted and accepted by the court resulting in fraud.

Based on Mr. Bridges testimony it did not co-inside with the reports placed in exhibits. Mr. Bridges refused to make any statement to the investigating officer on two separate occasions. (see police reports) and stated that he only talked to the EMS driver but no statement was given nor were they subpeona, and the police report was changed and a statement was given contrary to Mr. Bridges testimony.

Only one shell was produced and Mr. Bridges was allegedly shot 9 to 11 times with no logical explanation as to account for the rest of the shells. No slugs from the bullets or from Mr. Bridges body was produced.

No statement of witnesses, no explanation as to why he waited until the next year to contact the police. Mr. Bridges stated that his two front teeth were knocked out during thew altercation. The Petitioner claims that Mr. Bridges teeth were missing before the incident and had his dental records been produced, as the court ordered, it would have been made clear that Mr. Bridges has perjured himself. The fact that Mr. Bridges was located on Manistque and Avondale, there is no evidence that suggest that Petitioner Gibbons was located on the street based on testimony of the witnesses as well as the reports. These facts would suggest that Mr. Bridges was actually involved in a robbery that went bad and lead to a shoot out from Phillips to Manistque. Also it was alleged that Mr. bridges had received multiple shots by multiple shooters. This

is why ballistics  was so important in a case that comes down to credibility. The evidence that was kept from the jury has resulted in failure to adhere to discovery or exculpatory information. Failure to hear this claim would constitute a miscarriage of justice in a trio of 1986 decisions.

Federal habeas petitioners who claim he/she is detained pursuant to a final judgment of a state court in violation of the United States Constitution is entitled to have the Federal habeas Court make its own independent determination of his federal claims without being bound by determination on the merits of that claim reached in state proceedings. 28 USCA 2254.

It is quintessential miscarriage of justice to incarcerate a person who is innocent. Petitioner not only possess a statutory right to have potentially exculpatory evidence presented, the United States Constitution protects against incarcerating innocent persons. **Herrera v Collins**, 506 U.S. 390 (1993). Thus, when reliable exculpatory evidence is not presented at trial and is available, it makes it more likely than not that no reasonable juror would have convicted him, procedural bars must be set aside and an actual innocence analysis undertaken. Petitioner Gibbons has demonstrated his innocence even if the trial record contained sufficient evidence to support the jury's finding of guilt, because the reviewing court must consider the probative force of the new evidence together with what was produced at trial. The federal habeas court should grant Petitioner the opportunity to establish his innocence by ordering the production of the documents and testimony of the expert's concerning the medical examination of Mr. Bridges.

A quest for the truth does not terminate with Petitioner's conviction. As evidenced by the Michigan Court Rules, justice is best served by waiving normal procedural concerns and permitting one who has been convicted of a crime to prove factual innocence, even if if that undermines the finality

-14-

of the conviction. Our system fails every time an innocent person is convicted, no matter how meticulously the procedural requirements governing criminal trials are followed. That failure is even more tragic when an innocent person is sentenced to a prison term. When there is a possibility, if not probability, that information can put to rest the question of Petitioner's guilt. We would rather permit the information to be introduced, rather than sit by while a possibly innocent person languishes in prison. We should not elevate form so highly over substance that fundamental justice is sacrificed. As in **People v Barclay**, 208 Mich App 670 (1995), a decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made.

The Michigan Court of Appeals turned this very important issue into a sufficiency claim, thus their review was in favor of the prosecution. If the court's order had been adhered to, then the reviewing court would have made a different determination of the facts presented. It is fundamentally wrong to refuse a court's order. One can only imagine the reasonable doubt the jury would have had if it discovered that Mr. Bridges committed so many perjuries and that medical reports would have shed a light on the darkness that was presented by the prosecution. Petitioner Gibbons would have been acquitted of all charges not just the robbery charge, Therefore, this Honorable Court should **GRANT** Petitioners writ of habeas corpus.

## IV. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO CALL RES GESTA WITNESSES.

### Summary of Argument

Trial counsel was ineffective where he dismissed witnesses who were subpoena and interviewed prior to trial. Mr. Mark Avant and Booby Weise was at the gambling party the night of the shooting and would of testified to the fact that Mr. Bridges and company did come to stick up the game and that Mr. Bridges did in fact have a weapon which resulted in a short shoot out which lead around the corner which would explain how Mr. Bridges was found on Manistque (TT, 71-79), but states his altercation with Petitioner took place on Phillip Street. Mr. Bridges was reluctant to talk about what really happen from the beginning. Mr. Bridges refused to make a statement to the police. (see police report) Mr. Bridges refused twice before he gave the initials of Petitioner. Mr. Bridges informed prosecution that he wasn't going to lie on Petitioner (see affidavit of brief) and informed the court first by refusing to swear in. (TT, 73-74) Mr. Bridges stood mute before the court and the court demanded that Mr. Bridges testify a total of (4) times. Mr. Bridges finally swore in. Petitioner contends that Mr. Bridges was reluctant to tell the truth about what really happen the night of the shooting. Trial counsel expressed how important defense witnesses were. Trial counsel decided not to use them at trial. These witnesses were at the game the night of the shooting and could have testified to Mr. Bridges being involved in a shoot-out, which lead to the block over and that Petitioner was not in possession of any weapon. A witness who was able to view the Petitioner from a unique vantage point was re gestae witnesses who's testimony would not have been merely cumulative.

### Standard of Review

*** IT SHOULD BE NOTED THAT THIS STANDARD OF REVIEW APPLIES TO ALL CLAIMS OF

**INEFFECTIVE ASSISTANCE OF COUNSEL ISSUES. MORE DIRECT CITATION WILL BE INCLUDED. \*\*\***

Ineffective assistance of counsel is reviewed de novo. <u>Strickland v Washington</u>, 466 U.S. 668 (1984); <u>People v Pickens</u>, 446 Mich 298 (1994). Counsel is ineffective when counsel's performance was deficient under an objective standard of reasonableness, and the petitioner was prejudiced by counsel's actions or omissions. The petitioner must show a reasonable probability that absent the errors, the outcome would have been different. However, the petitioner need not show that counsel's deficient conduct more likely than not altered the outcome in the case. Although sound trial strategy generally precludes a finding of ineffective assistance of counsel, if counsel strategy is not sound, a finding of ineffective assistance is not precluded.

The failure of defense counsel to investigate and call res gestea witnesses may amount to ineffective assistance of counsel, where the missing testimony affected the out come of the trial. <u>People v Johnson</u>, 451 Mich 115 (1996). Failure to call six witnesses in a murder case to support defense that the witness had been firing shots and was shot by someone other than Petitioner. <u>People v Bass</u>, 247 Mich App 385 (2001).

In the case at hand, the unexplained failure to call two witnesses known before trial, which would have testified that Petitioner did not have a weapon was critical to the evidence presented to the jury for its determination.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his/her defense. **U.S. Const. AM VI.** In deciding whether a counsel's performance was ineffective , a court must consider the totality of the circumstances. It is unlikely that counsel's performance fell within a reasonable professional

-17-

judgment because Petitioner supplied him with the information needed concerning the res gestae witnessess. The right to effective assistance of counsel may in a particular case can be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudical. United States v Cronic, 466 U.S. 648 (1984).

Re gestae witnesses for purposes of statute requiring prosecution/defense counsel to file with the court information that a known witness has some information concerning the event in the continuum of the crime and whose testimony will aid in developing a full disclosure of the facts. M.C.L.A. § 767.40A; People v Godomski, 232 Mich App 24 (1998).

A person who was present at the time and locale of the shooting incident was res gestae witness within statute relating to endorcement upon information of eye witness to time of violence. People v Manns, 12 Mich App 543 (1968). This testimony was reasonably necessary to insure the disclosure of the whole truth and to protect the accused in view of the circumstances of the shooting incident. The failure of counsel to endorse or call these witnesses is not a mere irregularity. It is a positive invasion of a substantial right of the petitioner under the law. Stephens v Miller, 13 F.3d. 998 (7th Cir.1994).

The invasion of someone's right is not to be polliated because of the righteous indignations of the citizens at the prevalence of crime, nor because the crime was peculiarly atrocious and cowardly, nor because the testimony of such witness will be unfavorable to the prosecution. Testimony is admissible and defined as evidence of happenings near in time and place which complete the story of a crime. Atkinson v State, 581 N.E. 2d 1247 (Ind. 1991). Therefore, petitioner Gibbons conviction should be reversed and his writ of habeas corpus be granted.

## V. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO CALL EXPERT WITNESSES.

### Summary of Argument

Mr. Bridges alleged injuries resulted in a shoot out which lead to the next block and the proper evidence will show that Petitioner Gibbons could not have been the one who shot Mr. Bridges nor was he on Manistque when the shooting took place thus, the correct forensic and medical examination could prove these facts. If all these facts would have been presented, no reasonable jurist would have reached a guilty verdict.

Petitioner submits that trial counsel's failure to call expert witnesses was an error. Petitioner indicated to trial counsel that there were multiple weapons involved in the alleged shooting of Mr. Bridges as well as defense witness Mr. Joe Tweedy and the state's witness Mr. Anthony Bridges. Petitioner claims that an unknown gun man fired shots at Mr. Bridges while on Phillip Street. Mr. Bridges stated initially that he did not see who fired the shots. (PE, 11-12) This raises doubt to who actually fired the shots.

Defense counsel was aware of the false investigator's reports and medical reports which states that Mr. Bridges was shot six (6) times in the chest. (see attached copy) Mr. Bridges testimony contradicted these reports which raise the question who shot Mr. Bridges, where was he shot, and with what type of weapon, none of which the prosecution proved beyond a reasonable doubt.

Petitioner claims that a ballistic expert as well as a medical examiner should have been called in order to establish these facts.

### Standard of Review

***THE STANDARD OF REVIEW HAS BEEN PRESENTED INFRA CONCERNING INEFFECTIVE ASSISTANCE OF COUNSEL. PETITIONER WILL CITE OTHER DIRECT CASES AS NEEDED IN HIS

ARGUMENT.

According to the expert testimony act approved in 1937 by the commissioner on the uniform state laws, an embodied in abbreviated from in the former and present uniform rules of evidence and Federal rule of evidence 706, the further there mechanism of establishing panels of impartial experts designated by groups in the appropriate fields, from which panels court appointed experts would be selected, should also be considered an American Bar Association Committee approved in principal this procedure for impartial medical expert witnesses. In any event each expert may be requires to file a report which is subject to inspection, the act defenses with the requirements of the use of hypothetical question. (**McCormick Evidence 4th Edition**) In the case of **State v One Feather**, 702 F.2d 236 (1983), an ineffective assistance claim was made on defense for not motioning for expert witnesses, because the facts presented in the case an expert witness was necessary. **Duckett v Mullin**, 306 F.3d 982 (2002)

In **People v Johnson**, 116 Mich App 452 (1982), Johnson was convicted of the shooting and identified by the prosecution's witness, Mr. Witcher, who claimed that he saw Mr. Johnson with a 22 caliber rifle and shot him at point blank range. A ballistic expert testified to Mr. Witcher being shot with a 25 caliber handgun. Mr. Johnson could not have been the one to have fired the shot. Petitioner claims a gun battle lead over to the next block where Mr. Bridges was found by the police. (see police report) Mr. Bridges claimed he was shot in the back and his legs would not operate any more. The question is how did Mr. Bridges get from Phillips and Essex to Manistque Street, which never came up during the trial. Petitioner now contends that had an expert witness testified that in fact Mr. Bridges was shot with a rifle, it would have shed light on the fact that Petitioner could not have shot him as previously testified to.

-20-

Prosecution stated that Petitioner stood over Mr. Bridges and shot him six (6) times but one shell was found on the scene and it was not proved if it was a shell from one of the shots to Mr. Bridges' chest. Based on a rational trier of facts, Petitioner surely could not have been the one to have shot Mr. Bridges. if at all the facts would have been presented, no reasonable jury would have reached a guilty verdict. The evidence is clear on this issue that trial counsel was ineffective for not calling an expert witness and a new trial is warranted.

Counsel's failure to call such a witness deprived Petitioner Gibbons of a substantial defense. There is no sound trial strategy presumed because Petitioner would have benefited from such a witness. A ballistic expert would have pin pointed the caliber of bullet used and from what type of weapon it came from. The medical examiner would have been able to sustain what injuries occurred as a result of the shooting and what injuries the complainant had prior to this altercation. Assuming that this information would have been testified to, then the jury would have probably rendered a different verdict which would have been not guilty.

## VI. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO PROPERLY IMPEACH THE PROSECUTION WITNESSES.

### Summary of argument

Trial counsel allowed prosecution to submit unfounded evidence to the court without objection. Prosecution laid a foundation for vicious attack on Mr. Bridges without ever proving why he was shot, where he was shot or with what type of weapon. Prosecution based her case on inaccurate medical reports as well as a false investigators report. (see attached copy)

Trial counsel allowed Mr. Bridges to be transferred back to Jackson Prison during trial proceedings without all the facts being brought out and changing his statements throughout the proceedings states as follows: Mr. Bridges stated initially that "he didn't see who fires the shots". (TT, 1-14; PE, 11-12) Mr. Bridges stated that he wasn't sure about the weapons involved. (see police report) During the Preliminary Examination, Mr. Bridges gave a complete and accurate description, stating the weapon was a nine millimeter German Lugar, a cross between a 380 and a thirty eight, one of the most accurate hand guns and trial counsel did not question this change of testimony. This can hardly be harmless, due to the fact that Mr. Bridges claims that he was shot in the back and his legs would not work. (PE, 7-10). Yet, Mr. Bridges was a block over on the next corner when the police arrived.

Petitioner was on Phillip Street and Mr. Bridges was on Manistque Street. Mr. Bridges states that he was at a friends house on Phillip Street. (see investigator's report; TT, 106-125)Trial counsel never inquired how Mr. Bridges got from Phillip Street to Manistque Street if his legs were not able to move. Petitioner leaded with trial counsel to asked these questions.

### Standard of Review

The new confrontation clause test announced in **Crawford v Washington**, 194 Sct. 1354 (2004), completely bars the prosecution from introducing a

testimonial statement from a non testifying declarent, even if the statement is exceptionally reliable.

Quoting from **Crawford**, supra, although the court declined to give and exact definition from one of the Amicus briefs. Statements that were made under circumstances which lead to an objective witness reasonably to believe that the statements would be available for use at a latter trial, if the court ultimately adopts a definition such as this one, it would certainly cover witnesses and victim statements made to police or other government officials, as well as an type of report prepared during a criminal investigation, such as forensic or laboratory reports.

It would be hard to imagine a recent appellant decision with greater impact than **Crawford**, supra. The March bombshell from the U.S. Supreme Court literally gives life where it had bled away in a succession of appellate decisions that gutted the right of confrontation. **Crawford** enables trial counsel to fight unreliable evidence and out of court statements that have been routinely admitted for years.

Petitioner seeks to apply **Crawford** as to his confrontation clause because Petitioner has a constitutional right to confront his accuser and under the Fourth & Sixteenth Amendment to the United States Constitution. Trial counsel clearly did not cross-examine witnesses properly or challenge the reports resulting in ineffective assistance of counsel.

Attorney's decisions could be considered one of strategy that does not render it immune from attack, it must be reasonable strategy. **Jones v Woods**, 144 F.3d 1001 (1997). Petitioner has shown show cause as to impeachment and showed that the facts that were not presented at trial impaired his defense. Trial counsel was ineffective and Mr. Bridges should not have been dismissed from the trial proceedings without further rebuttal.

-23-

Petitioner and trial counsel did have a conflict of interest. **Mickens v Taylor**, 122 Sct. 1237 (2000). Under this rule, evidence of a witness character for truthfulness is admissible only if character for truthfulness has first been attacked.

This attack could take the form of adverse character evidence in the form of reputation or opinion testimony. This attack could also take the form of cross-examination of the witness designed to establish that he or she is lying or has made inconsistent statements about the matters at issue. **People v Matthews**, 143 Mich App 45 (2001), which speaks of evidence of truthful character an attack by cross examination.

**McCormick's** book on evidence at 176 (4th Ed.) omitted in June 1992, the committee voted to separate CJI2d 5.8 into present CJI2d 5.8,, which deals with character evidence offered on credibility. **Groseclose v Bell**, 130 F3d. 1161 (6th Cir. 1997). Trial counsel's failure to conduct any meaningful adversail challenge as shown by his failure to cross examine prosecutions witnesses properly and to object to any evidence, constituted ineffective assistance of counsel and violated Petitioner's right to confrontation.

False In uno doctrine (false in one thing, false all). The principle that if the jury believes that a witness testimony on a material issue intentionally deceitful, the jury may disregard all the witness testimony. One of the most effective ways to lie, is too mix false hood with truth, especially truth that seems particularly persuasive because of it's self inculpatory nature. (citing **Williamsoin** 119 Sct. 1887).

Based on the facts presented, Mr. Bridges was untruthful about the facts that occurred that night. Trial counsel failed to properly impeach the witness. **People v Garcia** quoting Ramsey, "the policy behind Ramsey was to insure that an accused has a right to confront all witnesses against him in open court and

-24-

have all the evidence placed on record at trial". When the fact finder relies on extraneous evidence, the petitioner is denied his constitutional rights to confrontation. **Gillespie, Michigan Criminal Law and Procedures 2d Edition.** Petitioner claims that prosecutions witnesses could have been confronted and impeached if the witness was not dismissed earlier in the trial proceeding. This error cannot be deemed harmless and it is a clear and plain error and reversal is required.

## VII. PETITIONER'S CONVICTIONS SHOULD BE REVERSED BECAUSE TRIAL COUNSEL FAILED TO MAKE TIMELY OBJECTIONS.

### Summary of Argument

Trial counsel failed to make timely objections throughout trial proceedings. The court demanded that Mr. Bridges take the stand after he refused to take the oath to testify, with no objection from trial counsel. (TT, 74) The court should have held a hearing as to why Mr. Bridges was reluctant to testify and that he should have been informed of his rights and that he could be held in contempt of court. This allowed the prosecution to present outside evidence to the jury.

Prosecution repeated statements that Petitioner threatened Mr. Bridges when he stated that he had not been threaten. Prosecution continued to make these statements concerning threats. (TT, 85-93) Prosecution also stated that Petitioner went into Mr. Bridges pockets, when Mr. Bridges stated that Petitioner did no go into his pockets and he did not see Petitioner take anything from him. (TT, 85-93)

### Standard of Review

Trial counsel's failure to make timely objection to statement provided by the prosecution is deemed ineffective assistance. Burns v Gammon, 260 F.3d 892 (8th Cir.2001). Trial counsel's failure to object will not preclude an appellate review where petitioner is denied a fair trial. People v Smith, 64 Mich App 263 (1975).

The claim of ineffective assistance of counsel is based on matters off the record in which an Evidentiary Hearing is required. People v Ginther, 390 Mich 436 (1973). Petitioner is entitled to an evidentiary hearing on his claim of

-26-

ineffective assistance where both trial and appellate counsel was constitutionally ineffective. Robinson v Maynard, 97 F3d. 887 (1996). Counsel's failure to raise issues of prosecutorial misconduct requiring an evidentiary hearing or remanding the case for such a hearing to determine if there was significant non-record issues and whether counsel erred in failing to raise it. Huston v Lockhart, 982 F2d. 1246 (1993).

In Gonzolez v Velo, 972 F. Supp 417 (ED. MICH 1997), there is reasonable probability that if these failures and errors were not in place, the jury would have seen a broader picture. Further questioning of the prosecutions's witnesses would have discredited their credibility and the jury would not have heard improper testimony and evidence and comments therefore, there is a reasonable probability that the trial outcome would have been different. For the forgoing reasons the evidence is clear on the issue of trial counsel being ineffective and a new trial should be granted. United States v Wolf, 787 F2d. 1094 (1986); Miller v Wainwright, 798 F2d. 426 (1986).

When trial counsel failed to object to inaccurate reports the outcome had an adverse affect on Petitioner's standing in the court. For Michigan criminal defense attorneys, the effect of Crawford, supra. is profound. If the prosecution attempts to admit any statements knowingly made to a governmental official or to anyone else investigating criminal activity without making the declarant available for cross-examination, the defense should object, on confrontational clause grounds, to the admission of these statements. Crawford effectively overrules a large number of Michigan Cases, in which the appellate courts upheld the admission of out of court statements made by non-testifying co-defendants, accomplices, witnesses and victims to police or other government officials. All such statements, with the possible exception of dying declarations, are now inadmissible unless the declarant testified and is

-27-

subject to cross-examination by the defendant or the defendant wrongfully made the declarant unavailable to testify with the specific intent to keep declarant from testifying.

The Michigan State Courts failed to address this issue and never rendered an opinion at all. Therefore , there is no application or which insures misapplication of the federal law.

The United States Supreme Court has long held that its decisions may be applied to any defendant currently on appeal. **Linkletter v Walker**, 381 U.S. 618 (1965).

**VIII.** **DEFENDANT-APPELLANT'S RIGHT TO PREPARE FOR TRIAL AND ASSERT A DEFENSE, WAS VIOLATED, WHERE THE PROSECUTION INTENTIONALLY AND WITH MALICIOUS INTENT DEPRIVED APPELLANT OF NECESSARY DISCOVERY MATERIALS, IN VIOLATION OF BRADY V MARYLAND AND DUE PROCESS OF LAW.**

**The Standard of Review**, for the denial of exculpatory evidence is reviewed by this court de novo, People Stanaway, 446 Mich 643 (1994); People v Walton, 71 Mich App 478 (1978). Discovery is not limited to that information which is admissible at trial. The focus is on whether fundamental fairness requires that defendant have access to the requested information. Where the prosecutor **RECEIVES A SPECIFIC** and relevant request, the failure to make a response is seldom, if ever, excusable. US v Argurs, 427 US 97; 96 S Ct 2392; 49 L Ed2d 342 (1976). Some evidence has such obvious substantial value to the defense that the prosecution must disclose it, even without a specific request. Id Argurs, supra. The suppression by the prosecution of evidence favorable to and requested by an accused violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. Brady v Maryland, 373 US 83; 83 S Ct 1194; 10 L Ed2d 215 (1975); evidence is material under Brady doctrine if it is exculpatory, or if it impeaches the credibility of a [key] government witness.

In this case, on October 25, 2002, the prosecution was ordered by trial court, the Honorable Patricia S. Fresard, to produce "necessary" discovery materials, for which went simply ignored by the prosecution. (See Appendix C). The following discovery materials were ordered to be provided to Appellant by the prosecution:

## REQUESTED DISCOVERY FROM PROSECUTOR'S OFFICE

1.      Defense is requesting additional discovery to develop exculpatory

and/or impeachment evidence in this case.

2.      Defense is requesting that this Court order the prosecutor to produce any and all police reports concerning or filed by Anthony Charles Bridges or Charles Anthony Bridges or Charles Bridges, whom we believe to be the same person, at the Fifth Precinct between the dates of November 14, 2001.

3.      Defense requests that the prosecutor provide the defense with copies of the criminal history of Anthony Bridges or Charles Anthony Bridges and James Edwards, both of whom will be prosecution witnesses at trial.

4.      Defense requests that the prosecutor provide the defense with copies of the criminal history of Anthony Bridges or Charles Anthony Bridges' medical records from St. John's Hospital from the date of the incident on or about November 14, 2001; defense has reasons to believe that Mr. Bridges was shot with a rifle and not with a handgun as he testified to at the Preliminary Examination.

5.      Defense requests that the prosecutor produce Mr. Bridges' dental records as defense has reason to believe that Mr. Bridges' two (2) front teeth have been missing for several years and were not knocked out during the alleged incident on or about November 14, 2001. Such dental records should be available from the Michigan Department of Corrections regarding Mr. Bridges' teeth.

6.      Although this information may not be in the prosecutor's file at the moment, the information is very likely <u>Brady</u> material which could [sic] exculpatory or impeachment evidence or both. Since medical and dental records are not available to the defense because it has no release from Mr. Bridges, the defense is asking the Court to order the prosecutor to produce the records and information requested.

7.      Mr. Gibbons is indigent and has no way of paying to obtain this information and he <u>cannot safely go to trial without the records and other information which defense believes to be either exculpatory and/or impeachment evidence</u>. (See Appendix C)(Motion For Discovery, dated 10-18-02).

The prosecution is obligated affirmatively to make known all the evidence of which it has

knowledge bearing upon the charged offense, whether it be favorable or unfavorable to the

prosecution, and it is all the more obligated when the defense affirmatively demands an evidentiary item it has reason to believe is in the possession or control of the prosecution. MCR 6.201(B); See also, People v Miller, 51 Mich App 117 (1974)([where defense counsel had not moved in the trial court to compel discovery, but instead made simple "requests" the trial court erred in dismissing the charges. There was no intentional or persistent obstruction or interference with discovery attempts justifying dismissal]). People v Harbin, 181 Mich App 654 (1989).

In order to obtain discovery materials, [a] criminal defendant must show that the evidence or information to be discovered is necessary to the preparation of his defense and in the interest of a fair trial. Discovery should be granted absent a more compelling showing by the prosecution of facts tending to prove that such an order would unfairly hamper the prosecution, and do a disservice to the public interest. People v Johnson, 356 Mich 619 (1959), "[A] defendant's access to pretrial discovery should be encouraged if it will aid in [the] determination of the truth and insure the defendant's right to a fair trial. People v Hayward, 98 Mich App 332 (1980). A defendant must show that the evidence or information cannot be obtained any other way. Appellants are not entitled to discovery of information that can be obtained from public records.

Appellant's defense counsel requested in his motion, (Appendix C), for the aformentioned discovery materials prior to the commencement of trial; and the attached discovery orders makes clear and certain that the prosecutor in this case was fully aware of her obligation in providing Appellant with the necessary discovery materials. The prosecution has deliberately disregarded the court's orders; resulting in a miscarriage of justice. The prosecution intentionally and with reckless disregard, disobeyed the court's discovery order.

In denying Appellant's claims of being denied necessary discovery materials and Brady claim;

trial court stated as follows:

> Appellant also argues that the prosecution withheld copies of the victim's prison dental records. At the preliminary exam, the victim, Bridges testified that defend struck him in the mouth with a gun, knocking out two of his teeth. Appellant argues that dental records would show that Bridges was missing teeth prior to the event in question. Even if records would show that Bridges was missing teeth prior to the assault, defendant has failed to establish that had the dental records been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. Bridges testified at trial that defendant, whom Bridges knew before the attack, put a gun to his head, and that when he tried to run, defendant shot him in the back. Appellant then proceeded to stand over Bridges and shoot him six times in the chest area. Given the other overwhelming evidence of defendant's guilt, defendant has not established that he would have had a reasonable likely chance of acquittal had the prison dental records of Bridges been produced. (Appendix A)

Trial court has abused its discretion in denying Appellant's motion for relief from judgment as it regards the above herein issue. Our Supreme Court defines "abuse of discretion" as:

> where the exercise of discretion turns upon a factual determination made by the trier of fact, an abuse of discretion involves more far than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidence not the exercise of will but perversity of well, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. People v Spalding, 355 Mich 382, 384 (1959). Although the Spalding definition of abuse of discretion is often quoted, it has been criticized, and the Michigan Supreme Court has recognized that a somewhat stricter standard must be observed in criminal cases. People v Charles O Williams, 386 Mich 565 (1972).

Trial court has ignored the fact, that in a criminal prosecution, the accused has a constitutional protected right to prepare for a defense, as well as being provided the necessary discovery materials to dispute the allegations that will be the subject of the criminal charges. Once the defendant has

produced some evidence, it is for the jury to determine, under proper instruction, its sufficiency. People v Hoskins, 403 Mich 95 (1978). The jury had a constitutional obligation and right to decide as to whether the dental records being relevant to the case. The reasonable probability of a different result occurring in Appellant's case rests solely with the jury not with trial court, and only after all evidence on record has went through the fact finding process. An intentional deprivation of necessary discovery material by the prosecutor is obvious in this case at bar; and the BRADY claim is the result of the suppression and denial of the requested discovery materials ordered by Judge Fresard. The record is deleted of any colloquy as to why the prosecutor would have just simply ignored [a] court's order requiring disclosure of necessary discovery materials. Trial court has acquiesced with the prosecution in the denial of Appellant's right to prepare for trial and receive necessary discovery materials that were relevant to the case; however, instead of discharging its duty as obligated under the State and Federal Constitution, trial court elected to categorically deny Appellant's claim under the faulty assumption that Appellant bares the burden of proof that a different result would have occurred had the discovery materials been provided.

This proposition is absurd and illogical. Appellant cannot speculate as to how such materials would have produced a different result, however, the materials were requested for the purpose of preparing for trial and asserting an adequate defense to the charges. For instant, the fact the victim has stated that Appellant [sic] knocked out his (2) front teeth is clearly an question of credibility for the jury's to decided and review. The requested dental records could have "aided" in the determination of the truth and insured that Appellant received a fair trial. For if the dental records were produced and indicated that the victim's teeth were missing prior to the date of the incident; then surely the victim's testimony that Appellant shot him several times, would be in question and so would his

credibility, as the victim would have been impeached. A reasonable juror presented with the suppressed information, i.e., dental records etc. would have to consider: why would the victim tell an untruth about having his teeth knocked out by the Appellant, where there is no logical or reasonable explanation made by the victim on record, regarding his two front teeth being knocked out. And if the victim would lie about such an incident occurring, with respect to his (2) front teeth being knocked out, then how is it [we] as jurors can believe that the Appellant shot the victim with intent to murder the victim? Of import, the dental records could have proved that the victim knowingly committed perjury and that the prosecution allowed it to go uncorrected, a desired result for which the prosecution intended to occur, that is, the suppression of the evidence. It is Appellant position, that no reasonable jurist sitting on this bench would deny the fact that this information concerning the victim's dental records, was either exculpatory evidence and/or impeachment materials as noted in Brady and could have shown that the prosecution allowed perjured testimony to go uncorrected. Committed perjury or either being impeached in the present of the jury could have provided Appellant with the necessary reasonable doubt necessary for an acquittal of the charges.

It must be noted that in this case, there is only one prosecution [key] witness, (the victim himself, Anthony Bridges); and that it was imperative that defense counsel be provided with any evidence, whether it be exculpatory or impeachment materials, to challenge the State's Key witness testimony that he was shoot by Appellant. When trial court ordered the prosecution to provide Appellant with discovery materials, "reasonable probability" of the outcome of the proceedings being different; does not apply here in the instant case, for obvious reasons. Trial court found "necessity" in having these documents produced prior to trial. It should be noted that on November 6, 2002, Judge Fresard transferred Appellant's case to Judge Boykin docket. (See Appendix D). Appellant has shown

-34-

in his motion for relief from judgment, that the discovery materials were suppressed and intentionally withheld by the prosecutor's office. Dismissal of the charges is a proper sanction where discovery is not provided to the defense before trial, precluding counsel from adequately preparing for trial. People v Davie and Obispo, 225 Mich App 592 (1997). Appellant was denied due process by the government's failure to disclose exculpatory evidence which was material. The suppressed statements would have directly undercut the intent requirement of defendant's mail fraud conviction, and would have bolstered the testimony of the only defense witness. Schledwitz v US, 169 F 3d 1003 (CA 6 2002).

## MATERIALITY

When the reliability of a given witness may well be determinative of guilty or innocence, nondislosure of evidence affecting credibility of the prosecution's witness falls within th[e] general rule of [of Brady]... A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury. Id. Brady supra at 405 US 154. Appellant asserts that had the requested and necessary discovery been provided the following material facts could have affected the jury's judgment as to guilt:

1. **BALLISTIC TESTING/EXCULPATORY EVIDENCE**: the prosecution failed to provided Appellant with the bullets retrieved from the body of the victim, for which should have been (6) or more in total. This evidence was necessary; as noted in the defense counsel's motion, the victim alleged he was shot with a handgun, and that counsel had reasonable belief to believe that the victim was hot with a rifle by another person. Without this necessary exculpatory evidence and/or impeachment materials, as I am innocent of the crime and never shot no one with a hand gun. The evidence was also necessary to prepare for trial and to asserts a defense.

2. **DENTAL RECORDS/IMPEACHMENT MATERIAL**: the dental records were a critical piece of DISCOVERY MATERIAL that would

have either impeached and/or showed that the victim was committing perjury at Appellant's trial. Such information would have been material as to the guilt and/or innocence of Appellant. There would have been no reasons for this victim to lie of being hit in the mouth with a gun and rob, and if it had been brought to the jury's attention that the victim perjured himself with this statement, then it would given less credence as to the victim being shot with a handgun (6) or more times by Appellant. Thus, the prosecution had an obligation in providing Appellant with the requested discovery materials where order to do so.(see Attached Appendix C). This evidence cannot be deemed to be of no value, in light of the fact, the evidence was not overwhelming and the issues at trial was that of a credibility contest between Appellant and the victim.

3.    **DENIAL OF RES GESTA WITNESS**: once the prosecutor lists a witness it intends to call, it must use due diligence to produce that witness unless the court grants a motion to delete the named of the witness. People v Awolford, 189 Mich .App 478 (1991). The prosecution failure to produce the only res gestae witness who could have informed the court, as I have alleged all along that it was not Appellant who committed this act of violence against the victim. The record is deleted of any colloquy as to due diligence to produce, James Robinson; who was then incarcerated with the MDOC at the Marquette Branch Prison, (MBP) located in Marquette, Michigan. (See Appendix C)(Subpoena of James Robinson as a Witness).

4.    **MEDICAL RECORDS/TREATING PHYSICIAN /EXCULPATORY EVIDENCE**: defendant requested medical records with respect to the victim "Anthony Bridges" injuries and treatment concerning the shooting; and while the prosecutor provided Appellant with partial hospital reports/documents, there was a substantial amount of other hospital records not provided to defendant, i.e. EMS Technician's Report, Intake/Triage Examination and Toxicology Reports. These documents, if provided would have been exculpatory in nature and/or impeached the victims's testimony at and during trial. The victim stated that he told the EMS Tech that Appellant was the person for whom shot him. (T, Vol I, p.95). The intake report from triage would have explained the victim awareness and appearance during the time he was being assessed for the alleged gun shot wounds; and as to whether he told any hospital official that Appellant shot him. The toxicology reports would have evidence that the victim was drug user and presently on a high dosage of delirious, with delusional thoughts of what was happening in his surrounding

> during the time in question. Mostly, this information was need to prepare for trial and assess the weakness and strengths of my defense, albeit counsel unwittingly elected to proceed to trial without having investigated these matters.

The Supreme Court has stated that there is "[N]o constitutional requirement that the prosecution make a complete and detail accounting to the defense of all police investigatory work on a case. Moore v Illinois, 408 US 786; 92 S Ct 256; 33 L Ed2d 706 (1976), [t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Id. Augurs, supra 427 US at 110. Dismissal of the charges against Appellant is the appropriate course of action where it shown, the prosecution in this case, has arbitrarily and capriciously denied Appellant necessary discover material for the purpose of preparing for trial and asserting a defense against the charges. This Court should remand this issue back to trial court to ascertain: 1) if discovery orders were issued by trial court; 2) if so, whether the prosecution failed to comply with the orders; and 3) whether defendant was prejudiced thereby. Appellant is entitled at the minimum, an evidentiary hearing to be conducted by trial court. When has there come a time in the Michigan Jurisprudence, that the prosecution in a criminal case can just ignore a court's discovery order, and then it becomes the Defendant's burden to prove that a different result would have occurred had the documents been provided. All that Appellant can prove is that these documents were need to prepare for a defense. Trial court never rescinded the orders completed by Judge P. Freasard; and thusly the prosecution was mandated to comply with discovery requests made by defendant.

The trial court has committed reversible error, and misplaced the issue being argued. It is Appellant position that this court must reverse and dismissed the charges against Appellant, for the

-37-

reasons stated by this court in, <u>People v Davie</u> and <u>Obispo</u>, 225 Mich at 597; for which this court held, "[W]e review a trial court's decision regarding remedy for noncompliance with a discovery order for an abuse of discretion. <u>People v Young</u>, 212 Mich App 630, 642; 538 NW2d 456 (1995). "The exercise of that discretion involves a balancing of the interests of the courts, the public and the parties... it requires inquiry into all the relevant circumstances, including the causes, and bona fides of tardy, or total noncompliance, and a showing by the objecting party of actual prejudice. Prejudice is shown by the lack of preparation for a defense, albeit defense counsel unwittingly chose to forgo requested and necessary discovery materials, prior to proceeding to trial. (See Issue III. Ineffective Assistance of Counsel).

Appellant asks that this Honorable Court, first analyze the issue as to whether Appellant was denied his constitutional right to prepare for trial and defend against the charges, by not being provided necessary and requested discovery materials, and whether the disobedience by the prosecutor to follow the court orders amount to egregious behavior warranting the reversal of Appellant's criminal conviction and dismissal of the charges. There is no court of law, for can allow the prosecutor to engage in this type of behavior without having the attorney disciplined; this would include the trial Judge Bokins.