**IX.** **DEFENDANT WAS DENIED A FAIR TRIAL, WHERE THE PROSECUTOR COMMITTED A MISCONDUCT, VIOLATING DEFENDANT'S RIGHT TO DUE PROCESS OF LAW. U.S. CONST AM XIV; CONST 1963 ART, 1 §20.**

**The Standard of Review,** concerning question of prosecutorial misconduct are reviewed de novo, People v Bahoda, 448 Mich 261 (1995); People v Legrone, 205 Mich App 74 (1994). The Court of Appeal has also said that the issue of intentional misconduct by a prosecutor is a mixed question of law and fact, with a factual findings being reviewed under the clearly erroneous standard and questions of law being reviewed de novo. People v Tracey, 221 Mich App 321 (1997). [A] prosecutor may not knowingly use false testimony to obtain a conviction and has the duty to correct false testimony. People v Lester, 232 MichApp 262 (1998). [I]t has been well established by the Supreme Court, "that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment". Mooney v Holohan, 296 US 103; 55 S Ct 340; 79 L Ed2d 791 (1935); See also Napue v Illinois, 360 US 264; 79 S Ct 1173(1959); the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appear. Id Napue, supra, 79 S Ct at 1177.

Appellant was denied a fair trial where the prosecution introduced false evidence that the victim (Bridges) had been robbed, knowing the victim's testimony to be false. Trial court in its opinion denying Appellant's claim of "Prosecutorial Misconduct" stated as follows:

> Defendant first claims that the prosecution engaged in misconduct when it introduced evidence that Bridges had been robbed. In response to the prosecution's questions at trial, Bridges initially stated that he did not see defendant take anything from his pocket. The record reveals that in both the police investigative report, and at the preliminary examination, Bridges indicated that defendant had taken money from his pocket after he had been shot. Under these

> circumstances, the prosecution could not be deemed to be presenting
> false evidence of a robbery, even though Bridges might have testified
> at trial that he did not see defendant remove anything from his pocket.
> (Emphasis added)

The Detroit Police Investigative Report, dated 8-17-02, is unsigned by Officer Derrick Duff,

OIC and/or this officer's supervisor. (See Appendix C). Specifically, a review of the notation with

respect to witnesses; states, "Witness: Inv Derrick Duff, Badge #I-93, will testify to preparing this

report, interrogation, reading of rights and being the O.I.C" The victim's written statement completed

for the Detroit Police is deleted of any colloquy as to [t]his person every being robbed by Appellant.

(See Appellant C). There are two serious questions raised by Appellant as it regards false evidence;

(1) the court will note in the investigative police report, Officer Derrick Duff has falsely stated that

Appellant has robbed the victim of [sic] $40.00 worth of lottery tickets, albeit the victim's written

statement does not evidence a robbery occurring; (2) the prosecutor accepted these allegation as made

by Officer Duff in his investigative preliminary report to be accurate and cause for filing the

complaint and request for arrest warrant against Appellant. The prosecutor knew or should have

known prior to filing a robbery charge that the victim has not alleged a robbery occurred, albeit at trial

the victim stated that he was carrying in excess of $100.00 in cash, in his pocket at the time of the

incident. (T Vol I, p92). The statement made by the victim at trial, concerning the victim having any

currency is false and mislead, for which the prosecution failed to correct this perjured testimony. The

statement is perjured testimony solely because this is not what the victim told police nor is the

testimony he made at the preliminary examination. (T, P EX, p.8).

Appellant contends that the prosecution has shown where she knew that even at the

preliminary exam stage, that uncorrected false evidence was used to bind Appellant over on robbery

charges, and that it would have been her duty to correct this misleading false information. It is of no consequence as to whether Appellant was acquitted of the robbery charges in this case; defending against an obvious "false charge" took a considerable amount of time from defending the greater charge of assault with intent to murder. Prejudice may be presumed from these facts, in light of the fact robbery was used for the motive in the greater charge of assault with intent to murder. While the jury decided that a robbery did not occur in this case, it could have well found that robbery was the solely motivating factor as to why the victim was shot. Trial court would have this court to believe that just because the charges were subsequently cleared that the issue of presenting false evidence was [sic] harmless error, offends the judiciary process and undermines the public's confidence. The police report clearly contains false information for the same aformentioned reasons: Officer Duff, has stated that the victim was robbed for $40.00 worth of lottery tickets, where the victim written report states otherwise to the contrary. (See Appendix C).

The medical records asserts that the victim was shoot six times in the chest area, however, the victim has stated that he was shot in the stomach area and left knee. (T, Vol I, pp 83-86). Thusly, the medical report is false and prejudice Appellant's right to a fair trial.

**PROSECUTION VOUCHING FOR THE WITNESS CREDIBILITY:**

The prosecution in this case has vouched for the credibility of the victim by stating that [sic] Mr. Bridges has no reasons to testify falsely. (Emphasis added). Trial court has cited the proper authority, i.e., People v Knapp, 244 Mich App 361, 382 (2001); however, trial courts finds by Appellant's failure to object to the statement, and that a curative instruction could have removed any taint the prosecutor may have caused, thus Appellant has failed to meet the burden of MCR 6.508(D)(3)(b)(i). [A] waiver is the intentional relinquishment of a known right and is distinct from

-41-

forfeiture, which is the failure to make a timely assertion of a right. An issue that is waived is not

subject to appellate review and one that is forfeited is subject to limited review. People v Carter, 462

Mich 206 (2000). Failure to object at trial bars appellate review in absence of manifest injustice.

People v Lueth, 253 Mich App 670 (2002). In this case, how would Appellant know to object to such

comments at trial, when defense counsel did not object? I did not waiver my right by non-objection

to the improper comment.

### RES GESTAE WITNESS/JAMES ROBINSON:

The res gestae witness rule encompasses not only eye witnesses, but eye witness whose

testimony may aid the making of "a fair presentation of the res gestae of the crime charged" and may

be necessary to protect the accused from being the victim of a false accusation. People v Kayne, 268

Mich 186, 194 (1934); People v Harrison, 44 Mich App 578 (1973), the term "res gestae witness"

includes an eyewitness to the corpus delicti of a crime and also a person who is present at the scene

of an alleged crime and who, at the time of such crime, has occasion to observe his or her

surroundings and sees no crimes. The fact that the res gestae witness is a close friend or relative of

the defendant will not excuse the prosecutor's duty to call the witness. Id. Harrison, supra.

In this case at bar, the prosecutor failed to ensure that res gestae witness James Robinson was

produce at trial, not did the prosecution show due diligence as to why this particular witness failed

to appear at trial to testify? Due diligence must be shown by the prosecutor in the production of all

res gestae witnesses, (endorsed), in order to ensure the defendant's right to a fair trial under People

v Pearson, 404 Mich 698 (1979), the prosecutor's failure to carry her burden of proof on this issue

mandates a new trial. People v Harris, 127 Mich App 127 (1983)(See Appendix C). James Robinson

was endorsed as a res gestae witness by the prosecution, and yet he was not brought forth before the

court. Appellant is entitled to a reversal of his conviction where it is shown that the prosecution has knowingly failed to obtain favorable and exculpatory evidence, i.e., James Robinson. Trial court nor this Honorable Court, in good faith, can speculate as to what this witness' testimony may have provided. Appellant may, however, aver that the witness was necessary to testify to the fact that "Appellant" did not shot this person "Mr. Bridges" on the day in question. Appellant asserts that I did not shot this victim Bridges and nor did I have possession of a handgun. Res gestae witness James Robinson could have shed light on the truth of the matter and verify what Appellant has always claimed - - I am innocent of the crime"! A miscarriage of justice will occur should this issue not be granted. (See Appendix F&E)

**X.** **DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION. US CONST, AM VI; CONST 1963, ART 1 §20.**

**The Standard of Review**: for ineffective assistance of counsel claims, are reviewed by this Honorable Court, de novo People v Carbin, 463 Mich 590 (2001); See also People v Pickens, 446 Mich 298 (1994); the Michigan constitution does not set a higher standard for evaluating claims of ineffective assistance of counsel, that are set forth in the a two part test found in Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 L Ed2d 674(1984). The constitutional rights to assistance of counsel entitles a criminal defendant to the effective assistance of counsel. Powell v Alabama, 287 US 45; 53 Sct 55;77 L Ed2d 158 (1932); See also Glasser v United States, 315 US 60; 62 S Ct 457; 86 L Ed2d 600 (1942).

In this case at bar, counsel performance falls below an objective standard as guaranteed by the Sixth Amendment of the US Constitution; and that no sound trial strategies would allow counsel to forgo the following issues by either objecting or having a reasonable knowledge of the law:

1)   Counsel failed to ensure that requested discovery materials were disclosed and issued by the Prosecution as ordered by the court, prior to the commencement of trial.

2)   Counsel elected to proceed to trial knowing that necessary discovery materials were not provided by the prosecution thus, rendering his cross-examination of the "only" prosecution key witness ineffective.

3)   Counsel failed to object to the prosecution improper comments and vouching for the credibility of the prosecution witness.

4)   Counsel failed to investigate the evidence collected by the Detroit Police Department, i.e., ballistic testing of the shell casing, insuring that all bullets were retrieved from the body of the victim by the Treating Physician, and ensuring that the chain of command of evidence was followed. It is obvious by the record that bullets were

removed from the victim body, and if it was shown that the bullets were that of a "rifle" then the victim would have been shown to commit perjury and/or the information could be used for impeachment purposes.

5)      Counsel failed to ensure that res geatea witness James Robinson was called to testify in this case, and failed to file proper motion for the execution of trial court's order which subpoena this person to appear at trial. It should be noted that the witness was incarcerated at the Marquette Branch Prison, located in Marquette, Michigan. (See Appendix C)(Defense counsel did not request for any endorsed prosecution rea gestae witness to be present at trial. (Appendix G).

6)      Defense counsel failed to ensure that Doctor Kakish, the Treating Physician who tended to the victim's injuries was present to substantiate the facts found in the hospital reports, and as alleged by the victim. There is also a subpoena for this witness, for whom was never made to be present at trial. The doctor's testimony as the injuries and bullets retrieved from the victim's body was critical information, for which could have shown that the victim was not shot with a handgun, but instead a rifle.

7)      Counsel failed to obtain the 911 Emergency System Records, that would have shown whether the victim made numerous calls to police regarding Appellant being the person who shot him. Failure to obtain this information resulted in ineffective assistance of counsel, as the records would have impeached the victim as to the statement he called the police over (20) times when he seen Appellant in the neighborhood.

In United States v Valanzuela-Bernal, 458 US 856; 102 S Ct 3440; 73 L Ed2d 1193 (1982),

the Supreme Court held, "due process is violated when testimony is made unavailable to the defense

by Government deportation of witnesses "only" if there is a reasonable likelihood that the testimony

could have affected the judgment of the trier of fact." [A] new trial must be granted when evidence

is not introduced because of the incompetence of counsel only if, there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Id Strickland, supra at 104 S Ct 2068. The Strickland Court defined [a] reasonable probability as a

"probability" sufficient enough to undermine the confidence in the outcome . Id supra.

Defense counsel was not prepared to proceed to trial by his failure to investigate Appellant's case and issues involved, as noted in counsel's motion for discovery, (Appendix C), counsel clearly knows that he will need the requested documents for the preparation of trial yet he failed to ensure that all requested items were presented for his review prior tp trial.

In a case directly on point, Tucker v Prelesnik, 181 F 3d 747 (CA6, 1999); the Petitioner asserted, specifically, that he was deprived of the effective assistance of counsel by virtue of his attorney's failure to prepare for trial or seek a continuance when he learned that witness would testy; failure to obtain witness' medical records and to use those records to impeach witness at trial; failure to obtain police reports indicating that witness had initially implicated another person rather than Petitioner, as the person who pushed him into restroom; failure to use the letter from a witness' workman compensation attorney to impeach said witness, operated to deprive Petitioner his rights to a fair trial and the effective assistance as guaranteed by the Sixth Amendment.

In Strickland, the Supreme Court established that the "benchmark for judging any claim of ineffective must be whether counsel's conduct so undermines the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id. Strickland, supra. Counsel's failure to request for a continuance with trial court, in finding res gestae witness (James Robinson), Dental Records, Ballistic Reports, Retrieved Bullets from victim and EMS Tech Reports/Toxicology Reports, casts serious doubt on the reliability of the testimony of the prosecution's sole witness and the failure to obtain and use earlier contradictory statements of the witness concerning the shooting, was error so serious as to have deprived Appellant of a fair trial as guaranteed by the Sixth Amendment.

**XI.** **DEFENDANT WAS DENIED DUE PROCESS OF LAW, WHERE THE PROSECUTION FAILED TO GIVE APPELLANT NOTICE OF SENTENCE ENHANCEMENT WITHIN (21) DAYS PRIOR TO APPELLANT BEING ARRANGED ON THE INFORMATION IN CIRCUIT COURT.**

**The Standard of Review,** of the prosecution providing a defendant with proper notice to seek enhancement under the habitual offender statute, People v Walker, 234 Mich App 299 (1999). Where the prosecution conceded error in failing to give notice that it was seeking an enhanced habitual offender sentence within 21 days of arraignment, the Defendant is entitled to resentence. People v Williams, 462 Mich 882(2000). See also MCL 769.13; and MCR 6.112(F)(G). Defendant did not become aware of the sentence enhancement notice, until the day of sentencing for which occurred on November 24, 2002. (See Attached Appendix E). There are no docket entries on the Clerk's Journal Records that indicate the enhanced notice was mailed to Defendant and/or defense counsel, i.e. proof of service. (See Appendix C).

The trial court do not address the issue in Defendant's Motion For Resentencing filed November 14, 2006. Instead, the court has stated:

> Both the warrant felony dated 8-17-07 in the district court and information felony filed in the 3rd Judicial Circuit in this matter contain a habitual offender 2nd Offense Notice referencing Defendant's prior conviction of the offense of armed robbery in the Recorder's Court for the City of Detroit, State of Michigan. (See Attached Appendix C).

While Appellant does not disagree with trial court's assertion that therein Appellant's court file exists a habitual 2nd offense notice, nevertheless, Appellant has asserted that Appellant was not provided a hearing to dispute the notice, and that the notice was filed in an untimely manner as required by the court rules and statute. Trial court record of testimony is inadequate for the purpose

-47-

of judicial review, and this Honorable Court must remand the issue back to trial court for articulation of the record.

#221815

Kevin Gibbons

Exhibits

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT COURT | ORDER<br>GRANTING DISCOVERY<br>FOR PROSECUTION | CASE No.<br>2-10814 |

PEOPLE OF THE STATE OF MICHIGAN,

vs.

*Kevin Gibbons*

At a session of said Court held in the
Frank Murphy Hall of Justice, on

Date: _10/4/02_

PRESENT: HON. _Patricia Frosard_
_(Judge)_

IT IS HEREBY ORDERED that, pursuant to MCR 6.201, defense counsel disclose to the Prosecuting Attorney the following:

1. A list of the names and addresses of all lay and expert witnesses the defendant intends to call at trial.

2. Any written or recorded statement by a lay witness whom the defendant intends to call at trial, except the defendant is not obliged to provide his or her own statement.

3. Any report of any kind produced by or for an expert witness whom the defendant intends to call at trial.

4. Any criminal record that the defendant intends to use at trial to impeach a witness.

5. Any document, photograph, or other paper that the defendant intends to introduce at trial.

6. A description of and an opportunity to inspect any tangible physical evidence that the defendant intends to introduce at trial.

Disclosure shall be made within 14 days of the issuance of this order.

Copies made under this Order shall be at prosecution expense.

Honorable Karen Fort-Hood
Chief Judge, Third Circuit Court

Distribution:
White – File
Yellow – Police Dept.
Pink – Defense Attorney
Goldenrod – Prosecutor

Form #59-C (Rev. 2/95)

ORDER GRANTING DISCOVERY FOR PROSECUTION



**CITY OF DETROIT**
**LAW DEPARTMENT**

660 WOODWARD AVENUE
1650 FIRST NATIONAL BUILDING
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550
FAX 313•224•5505
WWW.CI.DETROIT.MI.US

June 28, 2006

Georgina Bateman
12541 Rosemary
Detroit, MI 48213

RE:    **FREEDOM OF INFORMATION ACT REQUEST NO.  F06 00508**
       **DPD MATTER NUMBER.: A32250.017073**
       **BALLISTICS REPORT**

Dear Ms. Bateman:

Your request for copies of public records made under the Freedom of Information Act, Michigan Compiled Laws (MCL) 15.231 et seq., was received at the City of Detroit Law Department, Police Legal Advisor Section. The Act requires that a request must describe the records being sought sufficiently to enable the public body to locate the record  MCL 15.233(1).  Therefore, your request is denied.

Please be advised the Detroit Police Department does not maintain a centralized record of cases by name. In fact, the records of the Detroit Police Department are not centrally maintained. Rather, records are maintained at the section of the Police Department which generated the records. In order to process your request, the Police Legal Advisor Section would have to contact the various sections of the Detroit Police Department to determine if any records concerning the above referenced individual were being maintained at these sections. This clearly is not required by the Act since the Act specifically requires that a request must describe the records being sought sufficiently to enable the public body to locate the record. MCL 15.233(1). In order to locate the records you are seeking, the Legal Advisor Section requires the following information: **Date of incident, type of incident (Fatal or non Fatal) location of incident**; and any other information that you believe will be helpful in locating the requested reports. Please be as specific as possible when describing the records you are seeking.

Under Section 10 of the Freedom of Information Act, a person receiving a written denial of information requested has the right to submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason(s) for reversal of the denial or to bring a lawsuit in Circuit Court to compel disclosure of the public record within 180 days after the public body's final determination to deny a request. If you commence a court action and the court finds the information withheld by a public body was not exempt from disclosure, the requester may receive the records and could receive reasonable costs and attorney fees. MCL 15.240.

This denial does not preclude you from submitting a new request giving more specific identifying information on the documents you are seeking. Please reference the Police Legal Advisor Matter Number, A32250.017073, when providing additional information.

Sincerely,

Robyn J. Brooks
Assistant Corporation Counsel
Police Legal Advisor Section

RJB/mn



# The Circuit Court
## for the Third Judicial Circuit of Michigan
1441 St. Antoine
Detroit, Michigan 48226

**ULYSSES W. BOYKIN**
**CIRCUIT COURT JUDGE**

AREA CODE 313
TELEPHONE 224-2275

October 31, 2005

Kevin Gibbons #221815
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, MI 48880

       Re:  People v. Kevin Gibbons
             Case No.  02-010814

Dear Mr. Gibbons:

Enclosed please find:

(1)   Docket Entry Printout;
(2)   Complete Court File (which include Preliminary Exam Transcript;
(3)   Transcripts (Jury Trial & Sentencing)

Please be advised that any other documents you are requesting, i.e., police reports, exhibits, etc. must be obtained from the Detroit Police Department or the Wayne County Prosecutor's Office.

Very truly yours,

Zoretha Coleman
Adm. Asst. to Hon. Ulysses W. Boykin

Enclosures



**CITY OF DETROIT**
**LAW DEPARTMENT**

660 WOODWARD AVENUE
1650 FIRST NATIONAL BUILDING
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550
FAX 313•224•5505
WWW.CI.DETROIT.MI.US

July 6, 2006

Ms. Stephanie Barry
335 Eastlawn
Detroit, MI   48215

RE:   **FREEDOM OF INFORMATION ACT REQUEST NO. 06-284**
      **FILE NO. A32250.016627**
      **KEVIN GIBBONS**

Dear Ms. Barry:

This letter serves as the City of Detroit's amended response to your above-referenced request. Please be advised that your request is denied because the Detroit Police Department does not possess documents which correspond to the description of the record you have requested. Police Officer York of the Police Legal Advisor Section conducted a search on Case Trax but no record was found. Police Officer York advised that Mr. Gibbons was not arrested on any crime that would have a ballistics test taken. All arrest in 2002 were warrants and one for CCW (carrying a concealed weapon)/person on January 10, 2002 and no test would be given.

Under Section 10 of the Freedom of Information Act, a person receiving a written denial of information requested has the right to submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason(s) for reversal of the denial or to bring a lawsuit in Circuit Court to compel disclosure of the public record within 180 days after the public body's final determination to deny a request. If a court action is commenced, and the court finds the information withheld by a public body was not exempt from disclosure, the requester may receive the records and, could receive reasonable costs and attorney fees. MCL 15.240.

Sincerely,

ROBYN J. BROOKS
Assistant Corporation Counsel
Police Legal Advisor Section

RJB/wg

# WITNESS STATEMENT

## CASE PROGRESS

| | | FILE/CASE NO. |
|---|---|---|
| PRECINCT/SECTION #5 I. O.U | COMPLAINANT Anthony Bridges | |
| DATE 8-16-2002 | TIME 3:05 pm | PLACE ~~~~ | STATEMENT TAKEN BY INV. NFF |
| WITNESS Complt Anthony Bridges | RACE/SEX/AGE B/M | D.O.B. | HGT. | WGT. |
| SOC. SEC. NO. | RESIDENCE | PHONE BUS. |
| EMPLOYER | DEPARTMENT | BADGE NO. | SHIFT |
| RESIDING WITH: | CHILDREN/SCHOOL | |
| RELATIVES/FRIENDS: | ADDRESS | PHONE |

11-14-01    11:35

Q: what happened 8-15-2002 5:30 pm at Avondale - Manistique in the City of Detroit?

A: K.G and his friend came from along side of a house with guns in hands. K.G stuck a gun to my head and said "you know what time it is"

Q: what happened next?

A: K.G stuck a gun (9mm luger) to my head. I elbowed his arm holding the gun and punched him in the face, knocking him to the ground. I took off running. While I was running K.G shot me

Q: How do you know K.G shot you if you were running? When I elbowed K.G the gun opened fire I was shot once in the back, I started crawling. K.G caught up to me and hit me in the mouth with the butt of the gun knocking out (2) teeth. "I said "please don't shoot me." Stop what are you doing?

Q: what else happened?

A: K.G stepped back and said "Nigger you gonna die tonight" and shot me (5)more times
X Bridges

CPO 103 (REV. 4-76)                                                    C of D—72-ST₁

DETROIT POLICE DEPARTMENT    INVESTIGATOR'S REPORT    DATE 08-17-2002

| IN CUSTODY | | DEFENDANT NAME | ADDRESS WITH ZIP CODE | AGE | SEX | RACE | D.O.B. | IDENT NO. |
|---|---|---|---|---|---|---|---|---|
| YES | NO | | | | | | | |
| ☒ | ☐ | 1.  KEVIN MAURICE GIBBONS 2155 ALTER DET. MICH. 48215 | | 35 | M | BLK | 10/12/66 | 467411 |
| ☐ | ☐ | 2. | | | | | | |
| ☐ | ☐ | 3. | | | | | | |
| ☐ | ☐ | 4. | | | | | | |

OFFENSE (TO BE FILLED IN BY PROSECUTOR)

| TIME | DATE OF OFFENSE | PLACE OF OFFENSE | | DATE OF COMPLAINT | COURT FILE NUMBER | | JACKET NUMBER |
|---|---|---|---|---|---|---|---|
| 1135PM | 11/14/2001 | Avondale/Manstique | | 11/14/2001 | | | 02-5-456 |

| COMPLAINANT'S NAME | ADDRESS WITH | ZIP CODE | SEX | AGE | D.O.B. | RACE | RELATION TO DEF. |
|---|---|---|---|---|---|---|---|
| Anthony Bridges | | | Male | | | Black | Aquainted |

OTHER PENDING CHARGES        COMPLAINANT'S PHONE

| PERSON TO SIGN | ASSISTANT PROSECUTING ATTORNEY |
|---|---|
| Complainant | |

Description of Offense and Investigation: include Date, Time and Circumstance of Arrest and Medical Attention administered to Officers, Defendants and Complainants. Continue on Page 2 if necessary.

November-14-2001, approximately 11:35pm at Avondale / Manistique, in the city of Detroit, def shot complt 7 times. Complt, walking near above location saw def and unk B/M approach him with guns drawn at their sides. Def walked u.p to complt grabbed his shirt by the shoulder and stated"You know what time it is". Def put a gun to complt's head, complt heard a click, complt elbowed def's hand carrying the gun and punched def in the chin with his other hand and took off running. Complt felt a hot sharp pain in his back and fell to the ground and began crawling. Def caught up to complt,punched complt in the face knocking out 4 teeth with the butt of a gun. Def reached in complt's pocket and took #40.00 in lottery tickets, unk misc money. Def reached down to complt's chest attempting to shoot complt. Complt almost knocked the gun away. Def jumped back and stated"Nigger You gonna die tonight". Def shot complt 6 times in the chest. Based on description of def, he was arrested after being pointed out by complt.
COMPLAINANT: Will testify to the above facts being true.
WITNESS: P.O. Kenneth Bresinski,Badge#4460, will testify to receiving a p/ r to 471 Philip and getting a description from complt.
WITNESS: P.O. Laura Peterson, Badge#467, will testify to an arrest.
WITNESS: P.O. John Smith, Badge#4171, will testify to preparing an initial report.
WITNESS: P.O. Marvin Ouelette, Badge#860 will testify to observing complt's initial injuries.
WITNESS: Inv. Derek Duff, Badge# I-93, will testify to preparing this report, interrogation,reading of rights and being the O.I.C.

REVIEWED AND
APPROVED BY

(SIGNATURE OF INVESTIGATING OFFICER)     (Signature of Commanding Officer)     District or Bureau
Inv. Derek Duff

---

JACKET NUMBER 02-5-456

**WAYNE COUNTY**
**PROSECUTING ATTORNEY'S**
**RECOMMENDATIONS**

COMPLAINT NUMBER 5-623 315

| ☐ MISDEMEANOR ☒ FELONY | IN CUSTODY? ☒ YES ☐ NO | PRECINCT (DETROIT) 5th | | | | DATE |
|---|---|---|---|---|---|---|

I ☐ DENY ☐ RECOMMEND THE ISSUING OF A WARRANT AGAINST:

| NAME | ADDRESS | AGE | SEX | RACE | D.O.B. | IDENT. NO. |
|---|---|---|---|---|---|---|
| Kevin Maurice Gibbons | 2155 Alter Det. Mich. 48215 | 35 | M | BLK | 10/12/66 | 467411 |

| TION | ASSIGNED TO (NAME AND BADGE NO.) | INCIDENT NO. 1183642 | COMPLAINT NO. |
|---|---|---|---|

AWITCM

| PLACE OF OCCURRENCE ☒ ON ☐ STREET Avondale-Manistique | | OCCURRED ON OR BETWEEN | MO. 11 | DAY 14 01 | YR. | DAY OF WK W E D | TIME 11 35 11 40 11 48 | DAY ☐ NIGHT ☒ UNK. ☐ | CENSUS TR 513 5.12 |
|---|---|---|---|---|---|---|---|---|---|

NAME AND TYPE OF BUSINESS: City of Detroit

TYPE OF BLDG. (APT., HOTEL, PRIV. RES. — SINGLE FAMILY, ETC.): Public Street

SCOUT CA AREA

PERSON REPORTING OFFENSE: Complt

COMPLAINANT'S NAME: Anthony Bridges

| WAS COMPLAINANT WORKING? IF YES - OCCUPATION, BUSINESS NAME AND ADDRESS ☒ NO ☐ YES | COMPLAINANT INJURED? ☒ YES ☐ NO |
|---|---|

| METHOD OF ENTRY ☐ UNK. | METHOD OF ESCAPE ☐ UNK. | DESCRIBE WEAPON ☐ UNK. BSA 9mm |
|---|---|---|

| NO. OF PERPETRATORS 1 ☐ UNK. | DESCRIBE: ☒ MALE ☐ UNK. | ☐ FEMALE | ☐ JUVENILE ☐ UNK. | ☒ ADULT | ☐ WHITE ☐ OTHER | ☒ BLACK ☐ UNK. | TOTAL VALUE |
|---|---|---|---|---|---|---|---|

| VICTIM — PERPETRATOR RELATIONSHIP ☐ RELATED ☐ ACQUAINTED ☒ STRANGERS ☐ UNK. | UNIT(S) NOTIFIED Homi — Wilson NCC — Mulkey | NAME | TIME 12.06 DATE 11-15-01 |
|---|---|---|---|

### WERE THE FOLLOWING SOLVABILITY FACTORS PRESENT IN THIS INCIDENT?
(USING THE FORMAT ON THE INFORMATION GUIDE, GIVE DETAILS IN NARRATIVE BELOW FOR EACH YES ANSWER.)

| ARREST(S) ☐ YES ☒ NO | DESCRIPTION(S) OF PERPETRATOR(S) ☒ YES ☐ NO | WITNESS(ES) ☐ YES ☒ NO | VEHICLE LICENSE NUMBER(S) ☐ YES ☒ NO | PHYSICAL EVIDENCE ☒ YES ☐ NO |
|---|---|---|---|---|

A- NONE   B/m/Unk DOB   Street Name of Kg NFD

B- Police Run "Shooting"

C- Complt Refused to give wits Info on what lead to shoot but stated "Kg shot me over some bullshit" Wit Adv Complt more Info was needed but Complt refused

Med 26 Conveyed to St. Johns Seen by Dr Kafish Temp Serious Chart # 098393277

D/ Complt Lying on his side Head W/B 1 Feet S/B Complaing that he could not Breath

E- 11) Spent 9mm Casing on ET # 644490

| REPORTING OFFICER (PRINT OR TYPE) John Smith | OTHER OFFICERS INVOLVED Marvin Ouellette | BADGE 860 | COMMAND 5 | FURLOUGH 9 /4 |
|---|---|---|---|---|

SIGNATURE

| BADGE 4171 | COMMAND 5 | ASSIGNMENT 5-33 | FURLOUGH W/1 | | |
|---|---|---|---|---|---|

SUPERVISOR CHECKING REPORT (PRINT OR TYPE): D. Wilson

| RANK | SIGNATURE | COMPUTER ENTRY BY |
|---|---|---|

D.P.O. 108   C of D–783-RE (Rev. 9-81)   (FOUR ...IES TO BE MADE ON EACH PRELIMINARY COMPLAINT RECO... ...LUS EXTRAS AS NEEDED)   DETROIT POLICE DEPARTMENT

1-10-03

To whom it may concern,

I Brian Sewell was in the bullpen waiting to go to court, When I heard Anthony Bridges name called to the window to talk with his attorney or someone from the courtroom possiably a prose – cutor. Bridges was dressed in his state blues sporting his prison number on them in plain site. The woman spoke to Bridges saying that she has brought special clothes for him to change into so the jury would not know he was a prisoner of the state.

Mr. Bridges told the woman that he was not going lye on him and testify at all. Bridges also said that he just wishes to exercise his right to remain silent. The woman then kept trying to conv- ince Bridges to testfy even though he expressed a strong desire not to. The woman continued to violate Mr. Bridges right to remain silent and I believe she offered Bridges a time cut if he would cooperate.

Bridges then went into the courtroom and when he returned I later found out that he in fact did testify against Kevin Gibbons.

This statment is correct and true to the best of my knowledge. Please feel free to contact me at my current place of residence if you have any futher questoins.

Respectfully,

*Brian Sewell*

Brian Sewell

   435612

SUBSCRIBED AND SWORN BEFORE ME

TO THIS 22nd DAY OF January 2003

*Kathy A. Horton*

NOTARY PUBLIC
JACKSON COUNTY, MICHIGAN
MY COMMISSION EXPIRES ON 6/24/04

DATE: Jan. 22, 2003

Document No. 277910
M.S.ce

## Affidavit

I Carlton Hines, in the month of November 2002, sat in the bullpen talking to Anthony Bridges about his case. In which Mr. Bridges conveyed to me that he was unsure about what happened the night of the shooting, and that he was being pressured to testify against Mr. Kevin Gibbons. He stated that he was so high that he could'nt remember what actually happen that him and his boys was on some b.s. (bullshit) that night and it come back and bit them in the ass, and that him and his partner both got shot that night. Mr. Bridges also stated the Judge and the Prosecuting Attorney was pressuring him, he stated that he was not going to testify against Mr. Gibbons But when he came back from court, and we talked some more, Mr. Bridges told me Carlton Hines, that the Judge and the Prosecutor told him if he did'nt tell the court what Mr. Kevin Gibbons did he would go to jail for a long time.

*Carlton Hines*

Carlton Hines

Subscribed and Sworn to
before me this 14 , day of January 2008

FRANK L. SGAMBATI
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Sep 21, 2012
ACTING IN COUNTY OF

Notary Public

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CRIMINAL DIVISION

THE PEOPLE OF THE
STATE OF MICHIGAN,

        Plaintiff,

    V                                No.: 02-10814
                                     Hon. Patricia Fresard

KEVIN M. GIBBONS,

        Defendant.

_____/

RICHARD E. POWERS P43883       ATHINA T. SIRINGAS P35761
Attorney for Defendant            Assistant Prosecuting Attorney
81 N. Main Street                1441 St. Antoine
Mt. Clemens, Michigan 48043      Detroit, Michigan 48226
(586) 463-8691

_____/

## DEFENDANT'S MOTION
## FOR ADDITIONAL DISCOVERY

    NOW COMES Defendant, Kevin M. Gibbons, by and through his attorney,

Richard E. Powers, and hereby files this Motion for Additional Discovery, saying as

follows:

    1. Defense is requesting additional discovery to develop exculpatory and/or

impeachment evidence in this case

    2. Defense requests that this Court order the prosecutor to produce any and all

police reports concerning or filed by Anthony Charles Bridges or Charles Anthony

Bridges or Charles Bridges, whom we believe to be the same person, at the Fifth Precinct

between the dates of November 14, 2001 and August 16, 2002.

To Whom It May Concern,

I would like to Pettision the Court for Discovary Packay, I would also like to Request new Counsol. It's been 2 months I had to Put on my own Bond Reduction Submitt Request for Package. I Caint Even Call my Attorney and He havent BaBeen to See me Yet dispite my Request.
I need all this done as Soon as Possible

Thank You

Kevin M. Gibbons

Addressed on OCT 2 3 2002

IN A 71 DISTRICT COURT FOR THE COUNTY OF WAYNE

PEOPLE OF THE STATE OF MICHIGAN

VS Kevin. M. Gibbons          File NO. _____

    DEFENDANT(S)

                              Preliminary Examination Date
                              _____

# ORDER GRANTING DISCOVERY

It is Hereby ORDER that defense counsel be allowed to examine, and be furnished copies of the following:

- The Investigator's Report and all preliminary complaint reports (PCR's) concerning the above-captioned case;

- The arrest and Conviction record of the defendant(s);

- All written and recorded statements Known to the Police and Prosecutor of all witnesses;

   All Statements of the defendant(s) which are recorded or have been reduced to Writing;

   All corporeal and Photographic line-up sheets.

- All scientific reports in the possession of law enforcement prior to the preliminary examination.

Counsel in this case is assigned, due to the indigency of the defendant, and Copies made under this Order Shall be at Court expense.

   Approved as to form and Content:

# ST JOHN ® Health System
## Hospital and Medical Center

BRIDGES, ANTHONY
07/03/1958 M
11-15-01   043   E

**INJURY DESCRIPTION**

Bridges Anthony



1. Laceration
2. Abrasion
3. Hematoma
4. Bruise
5. Deformity
6. Open FX
7. GSW
8. Stab
9. Burn
10. Edema
11. Amputation
12. Drainage from Ears

**(IDENTIFY BY NUMBER)**

mult GS wounds to + chest wall + ⓇThoracic bk +
ⒷM.

| GLASGOW COMA SCALE | | |
|---|---|---|
| EYES OPEN | SPONTANEOUSLY | 4 |
| | TO VERBAL COMMAND | 3 |
| | TO PAIN | 2 |
| | NO RESPONSE | 1 |
| BEST VERBAL RESPONSE | ORIENTED AND CONVERSES | 5 |
| | DISORIENTED AND CONVERSES | 4 |
| | INAPPROPRIATE WORDS | 3 |
| | INCOMPREHENSIBLE SOUNDS | 2 |
| | NO RESPONSE | 1 |
| BEST MOTOR RESPONSE | TO VERBAL COMMAND: OBEYS | 6 |
| | TO PAINFUL STIMULUS: LOCALIZES PAIN | 5 |
| | FLEXION WITHDRAWAL | 4 |
| | FLEXION ABNORMAL | 3 |
| | EXTENSION | 2 |
| | NO RESPONSE | 1 |

**GCS (SUBTOTAL TO TOP)** 14

| REVISED TRAUMA SCORE | | |
|---|---|---|
| GLASGOW COMA SCALE | 13-15 | 5 |
| | 9-12 | 4 |
| | 6-8 | 3 |
| | 4-5 | 2 |
| | 3 | 1 |
| RESPIRATORY RATE | 10-29 | 4 |
| | >29 | 3 |
| | 6-9 | 2 |
| | 1-5 | 1 |
| | 0 | 0 |
| SYSTOLIC BLOOD PRESSURE | >89 | 4 |
| | 76-89 | 3 |
| | 50-75 | 2 |
| | 1-49 | 1 |
| | 0 | 0 |

**TOTAL TRAUMA SCORE** 13

Bridges was never hit in the chest

| RN SIGNATURE | DATE | TIME |
|---|---|---|
| | 11/15 | |

**TRAUMA RECORD 1**